## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNETICUT

| | | |
|---|---|---|
| **CURTIS REDDICK** | : | **CIVIL ACTION NO.** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **YALE UNIVERSITY,** | : | |
| **THE FEDERATION OF UNIVERSITY** | : | |
| **EMPLOYEES, LOCAL 35, UNITE** | : | |
| **HERE, AFL-CIO and** | : | |
| **MEG DEFENDANT RICCIO** | : | |
| | : | **August 8, 2013** |
| **Defndants.** | : | |

### COMPLAINT

NOW COMES, by and through his attorney of record, Plaintiff, Curtis Reddick, for his

complaints against Defendants, Yale University, the Federation of University Employees, Local

35, Unite Here, AFL-CIO, and Meg Riccio as follows:

### PRELIMINARY STATEMENT

1.      This is an action for equitable relief and damages as a result of Defendant's violation of

the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., as amended by the Americans

with Disabilities Amendments Act, Pub. L. No 11-0325 ("ADA"), the Family Medical Leave

Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq*.("FMLA") and the Connecticut Fair

Employment Practices Act, Conn. Gen. Stat. § 46a-60 *et seq*.

## THE PARTIES

2.      Curtis Reddick (hereinafter referred to as "Plaintiff") is an individual of the full age of majority and a citizen of the State of Connecticut, who and resides at 31 Victoria Court, Hamden, Connecticut.

3.      At all times relevant herein, Plaintiff was an employee within the meaning of the ADA.

4.      At all times relevant herein, Plaintiff was an employee covered under the FMLA.

5.      At all times relevant herein, Plaintiff is and remains a suffers from a chronic physical medical impairment that causes severe chronic spasms, loss of blood circulation, sleep apnea, anxiety, emotional distress and hyperventilation which substantially limits

        a)      one or more major life activities, including but not limited: to performing manual tasks, breathing, sleeping, lifting, concentrating, thinking and working and

        b)      a major bodily function including but not limited to his circulatory system.

6.      Defendant Yale University (hereinafter referred to as "Defendant Yale") is an undergraduate and graduate educational institution located at 105 Wall Street, New Haven, Connecticut.

7.      At all times relevant herein, Defendant Yale is qualified as an employer within the meaning of the ADA and an employer covered by the FMLA.

8.      The Federation of University Employees, Local, 35, Unite Hire, AFL-CIO (hereinafter referred to as "Defendant Union") is a Federally recognized union organization with a principal place of business located at 425 College Street, New Haven, Connecticut.  At all times relevant herein the Plaintiff was a member in good standing of the Defendant Union.

9.      At all times relevant herein, Defendant Union is qualified as an employer within the meaning of the ADA.

10.    Meg Riccio ( hereinafter "Defendant Riccio") is an individual who resides in the State of Connecticut and at all times relevant herein was an employee of Defendant Yale who was released by Defendant Yale to work for Defendant Union as Chief Steward.

11.    At all times relevant herein, the Plaintiff was an employee under the Connecticut Fair Employment Practices Act C.G.S. § 46a-51 *et seq.*

12.    At all times relevant herein, Defendant Yale and Defendant Union are qualified as employers and/or a Labor Organization under the Connecticut Fair Employment Practices Act C.G.S. § 46a-51 *et seq.*


## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action under the provisions of 28 U.S.C. § 1331 because it raises questions under the ADA and the FMLA.

14.    This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

15.    This court has personal jurisdiction over the Parties and venue is proper in the District of Connecticut under 28 U.S.C. § 1391(b) in that the claims arose in this District, the Parties reside in this district and the Plaintiff was damaged in this district.


## ADMINISTRATIVE HISTORY AND
## EXHAUSTION OF ADMINISTATIVE REMEDIES

16.    Plaintiff has exhausted administrative remedies.

17.     On August 11, 2011, Plaintiff filed a timely claim of discrimination against Defendant Yale with the Connecticut Commission on Human Rights and Opportunities ("CHRO")(CHRO Case File No.: 1230051), which was duly filed with the U.S. Equal Employment Opportunity Commission ("EEOC")(EEOC Charge No.:  16A-2011-01406).  On February 16, 2012, the CHRO retained his case for a full investigation after a favorable Merit Assessment Review.   On August 2, 2013, the CHRO granted Plaintiff a release of jurisdiction to pursue his claims in court against Defendant Yale.  On July 19, 2013, the EEOC issued a Notice of Right to Sue to Plaintiff to pursue his claims in court against Defendant Yale.

18.     On August 11, 2011, Plaintiff filed a timely claim of discrimination against Defendant Union with the CHRO (CHRO Case File No.: 1230052) and Defendant Riccio (CHRO Case File No.:  1230053).  Defendant Union's CHRO charge was duly filed with the EEOC (EEOC Charge No.:  16A-2011-01407).  On February 16, 2012, the CHRO retained these cases for a full investigation after a favorable Merit Assessment Review.   On August 2, 2013, the CHRO granted Plaintiff a release of jurisdiction to pursue his claims in court against Defendant Union and Defendant Riccio.  On July 19, 2013, the EEOC issued a Notice of Right to Sue to Plaintiff to pursue his claims in court against Defendant Union.

## FACTS COMMON TO ALL COUNTS

19.     Plaintiff was first hired by Defendant Yale in 1990 to work as a janitor at its institution.

20.     At all times relevant herein, Plaintiff was and remains a Union Steward for Defendant Union.

21.     At all times relevant herein, Plaintiff was qualified to perform and did perform the essential functions of his position in a satisfactory manner.

22.     Commencing in 2008, the Plaintiff began to suffer from a chronic medical condition that caused severe muscle spasms which interfered with is circulatory system and blood flow.  As a result of this condition, Plaintiff experienced symptoms including, but not limited to, muscle spasms, loss of blood circulation, sleep apnea, anxiety, emotional distress, and hyperventilation.

23.     Plaintiff's condition worsened and he began experiencing episodic flare ups of this condition which necessitated that he apply for intermittent family medical leave pursuant to the Family Medical Leave Act ("FMLA") which was granted by the Defendant Yale.

24.     To present date, the Plaintiff continues to be covered under intermittent family medical leave necessitated by the episodic flare ups of his medical condition.

25.     From 2008 through the present date, Defendant Yale has been fully aware and knowledgeable of the Plaintiff's medical condition and the resultant limitations to one or more major life activities and/or bodily functions.

26.     Immediately thereafter, Defendant Yale, began to harasse and retaliate against Plaintiff as a direct result of Plaintiff's use of FMLA leave time.

27.     In or around October, 2009, the Plaintiff's Supervisor, Mr. McGuire ("McGuire"), falsely accused the Plaintiff of failing to clean bathrooms located within the Plaintiff's assigned area, despite the fact that the Plaintiff was not the individual responsible for this task because this assignment was to be performed by night shift personnel. The Plaintiff reported this harassment and discrimination directly to the Dean of the Yale University Law School.

28.     Defendant Yale, through its agent, servant and/or employee McGuire, harassed, discriminated and retaliated against the Plaintiff for making his complaint of harassment and discrimination to the Dean by reprimanding the Plaintiff for failing to follow the chain of

command and by issuing written warnings based on the Plaintiff's absences from work, despite the fact that those absences were covered under the FMLA.

29.     McGuire, willfully and intentionally disclosed the Plaintiff's private and confidential health issues to other employees and continued to retaliate against the Plaintiff by giving Plaintiff written reprimands for Plaintiff's authorized absences from work despite the fact that each absence was excused and covered under the FMLA.

30.     Defendant Yale, through its Human Resources Department, then falsely informed the Plaintiff that he no longer had any FMLA leave time available to him.

31.     Or about November 24, 2009, the Plaintiff submitted a formal, written complaint to Defendant Yale regarding the harassment and discrimination he was being subjected to.

32.     At or about the same time, the Plaintiff suffered from an episodic flare up of his chronic medical condition, so severe in nature that the Plaintiff required emergency medical treatment and immediate transport form the workplace to the hospital via ambulance.

33.     When Plaintiff returned to work after this medical emergency, Defendant Yale, relieved him of his regular duties and assigned him to a position that only involved washing windows although, the Plaintiff was capable of performing the essential functions of his position.

34.     During this time, the Plaintiff participated in Defendant Yale's Team Leader Training Program and upon completion would be placed in a Team Leader Position.  This would result in an approximate Ten Thousand Dollar ($10,000.00) per year salary increase for Plaintiff.

35.     The Team Leader Training Program included a two week course which all participants were required to attend.  The Plaintiff attended this program.  On the last day of the program, the participants were required to give feed back as to the quality of the program.

36.     While in attendance at the last day of the Team Leader Training Program, the Plaintiff suffered from another episodic flare up of his medical condition, began experiencing symptoms that included difficulty breathing and shortness of breath, which required the Plaintiff to seek immediate, emergency medical attention. This episodic flare up resulted in the Plaintiff being absent from work for thee (3) days. These absences were covered under the Plaintiff's previously approved intermittent FMLA leave.

37.     When the Plaintiff returned to work, he learned that the other, non-disabled, participants of the Team Leader Training Program were granted promotions to Team Leader positions.  In fact, all other participants in the program were granted promotions to Team Leader positions.

38.     The Plaintiff asked when he would receive his promotion and when he would be placed into a Team Leader position. He was informed by both Defendant Yale and Defendant Union, that he would not be promoted because he did not complete the last day of the Team Leader Training Program.

39.     Upon learning that he would not be promoted, the Plaintiff protested that he should not be penalized for his failure to complete the last day of the Team Leader Training Program which was solely attributable to the episodic flare up of his medical condition that required him to leave in order to seek immediate emergency medical treatment.

40.     Because his failure to complete the Team Leader Training Program was directly attributable to his medical condition, the Plaintiff asked for the reasonable accommodation of being allowed the opportunity to complete the program.

41.     His request for reasonable accommodation was denied.

42.     In a letter dated September 27, 2010, the Plaintiff was formally advised that he had not been selected for promotion. This letter was jointly signed by representatives of the Defendant

Yale and the Defendant Union.  The Plaintiff immediately contacted Defendant Union's Chief

Steward, Defendant Riccio. He asked why she consented to and signed the letter when she was

fully aware and knowledgeable that the only reason he did not complete the last day of the

training program was because he suffered from an episodic flare up of his medical condition and

required immediate medical assistance.

43.     The Plaintiff then asked Defendant Riccio to file a grievance on his behalf with the

Defendant Union.

44.     In or around the third week of February, 2011, the Plaintiff was again required to use his

intermittent FMLA leave time due to an episodic flare up of his medical condition.  The Plaintiff

returned to work on or around March 2, 2011, and was able to perform the essential functions of

his position, with the reasonable accommodation of a minor lifting restriction documented by his

treating physician.

45.     The Plaintiff provided this medical documentation to Defendant Yale, who would not

have suffered any undue hardship or prejudice by granting the Plaintiff's accommodation.

46.     The Plaintiff did perform the essential functions of his position when he returned to work

in March, 2011, until approximately April 7, 2011, when the Plaintiff was informed by Gray

Mitchell ("Mitchell"), an agent, servant and/or employee of Defendant Yale, that the Plaintiff's

supervisor, Robert Young, ordered that the Plaintiff be removed from the workplace immediately

and until such time that the Plaintiff was able to return to work without restrictions.

47.     The Plaintiff protested that he had was able to perform and had been performing the

essential duties of his position for the previous two years despite any restrictions imposed as a

result of his chronic medical condition and asked Mitchell why he was now being forced out of

the workplace but was not provided with an answer.

48.     Defendant Yale forced the Plaintiff out of the workplace for five (5) weeks without pay and denied the Plaintiff the usual benefits of employment he would have normally accrued during that time.

49.     While excluded from the workplace, the Plaintiff requested that the Defendant Riccio file another grievance with regard to the Plaintiff being forced from the workplace.  At that time, the Plaintiff also inquired into the status of the failure to promote grievance that he previously requested Defendant Riccio file on his behalf.

50.     Defendant Riccio told the Plaintiff that she did not and refused to file the failure to promote grievance on his behalf against Defendant Yale.  Defendant Riccio knew or should have known that the Plaintiff was denied promotion because of his chronic medical condition.

51.     Defendant Riccio also told The Plaintiff that she would not and refused to file another grievance against Defendant Yale for Defendant Yale's conduct in forcing the Plaintiff out of work until such time that he could be returned to work without restriction. Defendant Riccio knew or should have known that the Plaintiff was forced from the workplace without cause and for a discriminatory purpose based on the Plaintiff's chronic medical condition.

52.     On August 12, 2011, The Plaintiff filed a formal Charge of Discrimination with the CHRO, which was duly filed with the EEOC and was supported by a sworn affidavit of the Plaintiff.

53.     When the Plaintiff reported to work on September 1, 2011, he was summoned to a meeting with Mitchell, wherein the Plaintiff was informed that he was being immediately relieved of his job duties, that the Plaintiff's duties would be assigned to other employees and that the Plaintiff's job assignments would be made on an as-needed basis.

54.     The Plaintiff protested to Mitchell that this change in his responsibilities was unfair, discriminatory and in direct retaliation for his having filed a formal Charge of Discrimination with the CHRO. Mitchell thereafter threatened the Plaintiff that his working hours would be reassigned if he continued to protest.

55.     As of the date of the filing of this Complaint, the Plaintiff continues to be employed by Defendant Yale and continues to be harassed and retaliated against in the terms and conditions of his employment with Defendant Yale.

56.     As of the date of the filing of his Complaint, the Plaintiff has not been promoted to a Team Leader position.

57.     As of the date of the filing of this Complaint, the Plaintiff continues to be a member of good standing and a union steward of Defendant Union and continues to be discriminated and retaliated against by Defendant Union.

58.     As of the date of the filing of this Complaint, Defendant Riccio continues to aid and abet Defendants in discriminating and retaliating against Plaintiff.


**COUNT ONE**
**Violation of the ADA**
**(Against Defendant Yale)**


1-58.   Plaintiff realleges and incorporates by reference paragraphs one (1) through fifty eight (58) as if fully set forth herein.

59.     The Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C.§12102(2).  The Plaintiff suffers from a chronic physical, medical impairment that causes severe chronic spasms, loss of blood circulation, sleep apnea, anxiety, emotional distress and hyperventilation which substantially limits

a)      one or more major life activities, including but not limited to performing manual tasks, breathing, sleeping, lifting, concentrating, thinking and working and

b)      a major bodily function including but not limited to his circulatory system.

60.     At all relevant times, the Plaintiff has been and remains qualified to perform the essential functions of his position with Defendant Yale, with or without reasonable accommodation.

61.     At all times relevant herein, Defendant Yale had actual knowledge of Plaintiff's chronic physical, medical impairment and resultant limitations to one or more of Plaintiff's major life activities and/or bodily functions.

62.     Whether or not the Plaintiff had a disability within the meaning of 42 U.S.C.§ 12102(2), at all relevant times herein, Defendant Yale regarded the Plaintiff as having such a disability.

63.     Whether or not the Plaintiff had a disability within the meaning of 42 U.S.C.§ 12102(2), at all relevant times herein, the Plaintiff had a history and record of having such a disability.

64.     Defendant Yale's regarding the Plaintiff as having a disability and having a record of having a disability was a motivating factor in Defendant Yale's actions.

65.     Defendant Yale's actions described above constitute discrimination in violation of the ADA, which prohibits discrimination on the basis of disability

66.     Defendant Yale, by and through is servants, agents and/or employees, violated the ADA in one or more of the following ways:

a)      In that Defendant Yale interfered with the Plaintiff's privileges of employment on the basis of the Plaintiff's disability;

b)      In that Defendant Yale discriminated against the Plaintiff in such a way that it adversely affected his status as an employee;

    c)     In that Defendant Yale treated the Plaintiff adversely different from similarly situated non-disabled employees;

    d)     In that Defendant Yale discriminated against the Plaintiff for requiring and/or requesting reasonable accommodations;

    f)     In that Defendant Yale regarded the Plaintiff as being disabled.

67.    As a direct and proximate result of Defendant Yale's unequal treatment and discrimination, the Plaintiff has been deprived of equal employment opportunities.

68.    As a further direct and proximate result of Defendant Yale's discrimination of the Plaintiff, the Plaintiff has been deprived of income and wages, and has been deprived of access to certain benefits to which he was entitled under Defendant Yale's employment plan.  Plaintiff has also lost or will lose in the future payment of promotional salary, bonus earnings, pension benefits, and interest.

69.    As  further result of Defendant Yale's discriminatory conduct, the Plaintiff has suffered severe humiliation, embarrassment, emotional distress, and harm to professional reputation.

70.    Plaintiff has suffered and will continue to suffer injuries and losses as a result of Defendant Yale's wrongful and discriminatory acts.

71.    Defendant Yale's conduct towards the Plaintiff was arbitrary, discriminatory and retaliatory all in violation of the ADA.  Defendant Yale Exhibited ill will, malice, improper motive and indifference to the Plaintiff's civil rights on the basis of Plaintiff's disability.

72.    As a result of said discrimination, the Plaintiff has suffered damages and is entitled to recover all relief available under the federal statute, including punitive damages.

**COUNT TWO**
**Retaliation in violation of ADA**
**(Against Defendant Yale)**

1-72.    Plaintiff realleges and incorporates by reference paragraphs one (1) through seventy two (72) of this Complaint and incorporates them herein by this reference.

73.    Defendant Yale's actions described above constitute retaliation in violation of the ADA, which prohibits retaliation on the basis of disability.

74.    Defendant Yale, by and through its agents, servants and/or employees, violated the ADA in one or more of the following ways:

a)    In that Defendant Yale retaliated against the Plaintiff for requesting and/or being absent from work due to his disability even though such absences constituted a reasonable accommodation under the law;

b)    In that Defendant Yale retaliated against the Plaintiff by failing to promote him;

c)    In that Defendant Yale retaliated against the Plaintiff for requiring and/or requesting reasonable accommodations for his disability.

75.    As a result of Defendant Yale's violation of the ADA, the Plaintiff suffered damages including, loss of income and wages and benefits, and harm to his professional reputation.

76.    As a further result of Defendant Yale's retaliatory treatment of the Plaintiff, the Plaintiff has suffered severe humiliation, embarrassment, and emotional distress.

77.    Plaintiff has suffered and will continue to suffer injuries as a result of Defendant Yale's wrongful and retaliatory acts.

78.    Defendant Yale's retaliatory conduct towards the Plaintiff was arbitrary, discriminatory and retaliatory all in violation of the ADA.  Defendant Yale Exhibited ill will, malice, improper motive and indifference to the Plaintiff's civil rights on the basis of his disability.

79.     As a result of said retaliatory conduct, the Plaintiff has suffered damages and is entitled to recover all relief available under the federal statute, including punitive damages.

## COUNT THREE
**Interference with Exercise of FMLA Rights, FMLA Discrimination and Retaliation
(Against Defendant Yale)**

1-79.   Plaintiff realleges and incorporates by reference paragraphs one (1) through seventy nine (77) as if fully set forth herein.

80.     This claim is brought under the Family Medical Leave Act of 1993 ("FMLA").

81.     As a result of the Plaintiff's chronic medical condition, Plaintiff consulted health care providers and was placed under the care of physicians.  The Plaintiff received medical care and treatment for his chronic medical condition including surgery.

82.     Plaintiff's chronic medical condition is a serious health condition as that term is defined by the FMLA.

83.     Defendant Yale, by and through its servants, agents and/or employees, violated and/or interfered with the Plaintiff's rights under the FMLA in one or more of the following ways:

    a)      by failing to promote the Plaintiff;

    b)      by retaliating against the Plaintiff for taking medical leave;

    c)      by treating the Plaintiff adversely different than other similarly situated employees who had not taken a medical leave of absence under the FMLA; and

    d)      by using  Plaintiff's medical leave of absences as a motivating factor in taking adverse employment actions against the Plaintiff.

84.     Based upon Defendant Yale's' granting the Plaintiff intermittent FMLA time, Defendant Yale is collaterally stopped from asserting that the Plaintiff was ineligible for FMLA.

85.     As a direct and proximate result of Defendant Yale's wrongful acts and/or omissions, the Plaintiff sustained damages, including but not limited to: lost wages, lost promotions, lost bonuses, lost earning capacity, lost benefits and other expenses and losses that would not otherwise have been incurred.

86.     Defendant Yale failed to act in good faith.

**COUNT FOUR**
**Disability Discrimination in Violation of**
**Connecticut Fair Employment Practices Act C.G.S. § 46a-60(a)(1).**
**(Against Defendant Yale)**

1-86.   Plaintiff realleges and incorporates by reference paragraphs one (1) through eighty six (86) as if fully set forth herein.

87.     Defendant Yale, by and through is servants, agents and/or employees, violated the Connecticut Fair Employment Practices Act C.G.S. § 46a-60(a)(1) in one or more of the following ways:

        a)      In that Defendant Yale interfered with the Plaintiff's privileges of employment on the basis of the Plaintiff's disability;

        b)      In that Defendant Yale discriminated against the Plaintiff in such a way that it adversely affected his status as an employee;

        c)      In that Defendant Yale treated the Plaintiff adversely different from similarly situated non-disabled employees;

        d)      In that Defendant Yale discriminated against the Plaintiff for requesting and/or requiring reasonable accommodations

88.     In that Defendant Yale intentionally discriminated against the Plaintiff because Defendant Yale knew the Plaintiff had a disability, knew that the Plaintiff requested and/or required reasonable accommodations and that the Defendant Yale knew of should have known of its legal obligations under the laws protecting disabled employees, yet Defendant Yale failed to act in good faith in complying with the law.

89.     As a direct and proximate result of Defendant Yale's violation of Connecticut Fair Employment Practices Act C.G.S. § 46a-60(a)(1), the Plaintiff has been deprived of equal employment opportunities and has sustained damages including lost wages and benefits, has been humiliated and embarrassed and has suffered mental anguish and emotional distress.

**COUNT FIVE**
**Retaliation in Violation of**
**Connecticut Fair Employment Practices Act C.G.S. § 46a-60(a)(4)**
**(Against Defendant Yale)**

1-89.   Plaintiff realleges and incorporates by reference paragraphs one (1) through eighty nine (89) as if fully set forth herein.

90.     Defendant Yale, by and through its agents, servants and/or employees, violated the Connecticut Fair Employment Practices Act C.G.S. § 46a-60(a)(4), in one or more of the following ways:

a)      In that Defendant Yale retaliated against the Plaintiff for requesting and/or being absent from work due to his disability even though such absences constituted a reasonable accommodation under the law;

b)      In that Defendant Yale retaliated against the Plaintiff by failing to promote him;

c)      In that Defendant Yale retaliated against the Plaintiff for requiring and/or requesting reasonable accommodations for his disability.

16

91.     As a result of Defendant Yale's violation of C.G.S. § 46a-60(a)(4), the Plaintiff suffered damages including:  loss of employment, loss of income and wages and benefits and harm to his professional reputation.

92.     As a further result of Defendant Yale's retaliatory actions toward the Plaintiff, the Plaintiff has suffered severe humiliation, embarrassment, and emotional distress.

93.     The Plaintiff has suffered and will continue to suffer injuries as a result of Defendant Yale's retaliatory and wrongful acts.

94.     Defendant Yale exhibited ill will, malice, improper motive and indifference to the Plaintiff's civil rights by retaliating against him.

**COUNT SIX**
**Violation of the ADA**
**(Against Defendant Union)**

1-94.   Plaintiff realleges and incorporates by reference paragraphs one (1) through ninety four (94) as if fully set forth herein.

95.     The Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C.§12102(2).  The Plaintiff suffers from a chronic physical medical impairment that causes severe chronic spasms, loss of blood circulation, sleep apnea, anxiety, emotional distress and hyperventilation which substantially limits

        a)     one or more major life activities, including but not limited to performing manual tasks, breathing, sleeping, lifting, concentrating, thinking and working and

        b)     a major bodily function including but not limited to his circulatory system.

96.     At all relevant times, the Plaintiff has been and remains qualified to perform the essential functions of his position, with or without reasonable accommodation.

97.     At all times relevant herein, Defendant Union had actual knowledge of Plaintiff's chronic physical medical impairment and resultant limitations to one or more of Plaintiff's major life activities and/or bodily functions.

98.     Whether or not the Plaintiff had a disability within the meaning of 42 U.S.C.§ 12102(2), at all relevant times herein, Defendant Union regarded the Plaintiff as having such a disability.

99.     Whether or not the Plaintiff had a disability within the meaning of 42 U.S.C.§ 12102(2), at all relevant times herein, the Plaintiff had a history and record of having such a disability.

100.    Defendant Union's regarding the Plaintiff as having a disability and having a record of having a disability was a motivating factor in Defendant Union's actions.

101.    Defendant Union's actions described above constitute discrimination in violation of the ADA, which prohibits discrimination on the basis of disability

102.    Defendant Union, by and through is servants, agents and/or employees, violated the ADA in one or more of the following ways:

a)      In that Defendant Union interfered with the Plaintiff's privileges of employment on the basis of the Plaintiff's disability;

b)      In that Defendant Union discriminated against the Plaintiff in such a way that it adversely affected his status as an employee;

c)      In that Defendant Union treated the Plaintiff adversely different from similarly situated non-disabled employees;

d)      In that Defendant Union discriminated against the Plaintiff for requesting and/or requiring reasonable accommodations;

f)      In that Defendant Union regarded the Plaintiff as being disabled.

103.    As a direct and proximate result of Defendant Union's unequal treatment and discrimination, the Plaintiff has been deprived of equal employment opportunities.

104.    As a further direct and proximate result of Defendant Union's discrimination of the Plaintiff, the Plaintiff has been deprived of income and wages, and has been deprived of access to certain benefits to which he was entitled under Defendant Yale's employment plan.  Plaintiff has also lost or will lose in the future payment of bonus earnings, pension benefits, and interest.

105.    As  further result of Defendant Union's discriminatory conduct, the Plaintiff has suffered severe humiliation, embarrassment, emotional distress, and harm to professional reputation.

106.    Plaintiff has suffered and will continue to suffer injuries and losses as a result of Defendant Union's wrongful and discriminatory acts.

107.    Defendant Union's conduct towards the Plaintiff was arbitrary, discriminatory and retaliatory all in violation of the ADA.  Defendant Union exhibited ill will, malice, improper motive and indifference to the Plaintiff's civil rights by denying promotions on the basis of his disability.

108.    As a result of said discrimination, the Plaintiff has suffered damages and is entitled to recover all relief available under the federal statute, including punitive damages.

**COUNT SEVEN**
**Retaliation in violation of ADA**
**(Against Defendant Union)**

1-108.  Plaintiff realleges and incorporates by reference paragraphs one (1) through one hundred and eight (108) of this Complaint and incorporates them herein by this reference.

109.    Defendant Union, by and through its agents, servants and/or employees violated the ADA in one or more of the following ways:

a)      In that Defendant Union retaliated against the Plaintiff for requesting and/or being absent from work due to his disability even though such absences constituted a reasonable accommodation under the law;

b)      In that Defendant Union retaliated against the Plaintiff by failing to promote him;

c)      In that Defendant Union retaliated against the Plaintiff for requesting and /or requiring reasonable accommodations for his disability.

110.    As a result of Defendant Union's violation of the ADA, the Plaintiff suffered damages including, loss of income and wages and benefits, and harm to his professional reputation.

111.    As a further result of Defendant Union's retaliatory treatment of the Plaintiff, the Plaintiff has suffered severe humiliation, embarrassment, and emotional distress.

112.    Plaintiff has suffered and will continue to suffer injuries as a result of Defendant Union's wrongful and retaliatory acts.

113.    Defendant Union's retaliatory conduct towards the Plaintiff was arbitrary, discriminatory and retaliatory all in violation of the ADA.  Defendant Union Exhibited ill will, malice, improper motive and indifference to the Plaintiff's civil rights by denying promotions on the basis of his disability.

114.    As a result of said retaliatory conduct, the Plaintiff has suffered damages and is entitled to recover all relief available under the federal statute, including punitive damages.

## COUNT EIGHT
### Violation of Connecticut Fair Employment Practices Act C.G.S. § 46a-60(a)(1)
### (Against Defendant Union)

1-114.  Plaintiff realleges and incorporates by reference paragraphs one (1) through one hundred fourteen (114) of this Complaint and incorporates them herein by this reference.

115.    Defendant Union by and through is servants, agents and/or employees, violated the Connecticut Fair Employment Practices Act C.G.S. § 46a-60(a)(1) in one or more of the following ways:

a)      In that Defendant Union interfered with the Plaintiff's privileges of employment on the basis of the Plaintiff's disability;

b)      In that Defendant Union discriminated against the Plaintiff in such a way that it adversely affected his status as an employee;

c)      In that Defendant Union treated the Plaintiff adversely different from similarly situated non-disabled employees;

d)      In that Defendant Union discriminated against the Plaintiff for requesting and/or requiring reasonable accommodations.

116.    In that Defendant Union intentionally discriminated against the Plaintiff because Defendant Union the Plaintiff had a disability, knew that the Plaintiff requested and/or required reasonable accommodations and that the Defendant Union knew of should have known of its legal obligations under the laws protecting disabled employees, yet Defendant Yale failed to act in good faith in complying with the law.

117.    As a direct and proximate result of Defendant Yale's violation of Connecticut Fair Employment Practices Act C.G.S. § 46a-60(a)(1), the Plaintiff has been deprived of equal employment opportunities and has sustained damages including lost wages and benefits, has been humiliated and embarrassed and has suffered mental anguish and emotional distress.

**COUNT NINE**
**Retaliation in Violation of**
**Connecticut Fair Employment Practices Act C.G.S. § 46a-60(a)(4)**
**(Against Defendant Union)**

1-117.  Plaintiff realleges and incorporates by reference paragraphs one (1) through one hundred

seventeen (117) as if fully set forth herein.

118.   Defendant Union, by and through its agents, servants and/or employees, violated the

Connecticut Fair Employment Practices Act C.G.S. § 46a-60(a)(4), in one or more of the

following ways:

      a)      In that Defendant Union retaliated against the Plaintiff for requesting and/or being

absent from work due to his disability even though such absences constituted a reasonable

accommodation under the law;

      b)      In that Defendant Union retaliated against the Plaintiff by failing to promote him;

      c)      In that Defendant Yale retaliated against the Plaintiff for requiring and/or

requesting reasonable accommodations for his disability.

119.   As a result of Defendant Union's violation of C.G.S. § 46a-60(a)(4), the Plaintiff suffered

damages including:  loss of employment, loss of income and wages and benefits and harm to his

professional reputation.

120.   As a further result of Defendant Union's retaliatory actions toward the Plaintiff, the

Plaintiff has suffered severe humiliation, embarrassment, and emotional distress.

121.   The Plaintiff has suffered and will continue to suffer injuries as a result of Defendant

Union's retaliatory and wrongful acts.

122.   Defendant Yale exhibited ill will, malice, improper motive and indifference to the

Plaintiff's civil rights by retaliating against him.

**COUNT TEN**
**Aiding and Abetting Discrimination Violation of**
**Connecticut Fair Employment Practices Act C.G.S. § 46a-60(a)(5)**
**(Against Defendant Riccio)**

1-122.  Plaintiff realleges and incorporates by reference paragraphs one (1) through one hundred twenty two (122) as if fully set forth herein.

123.    Defendant Riccio aided and abetted, or attempted to aid and abet Defendant Yale and Defendant Union, in its discrimination and retaliation against the Plaintiff on the basis of Plaintiff's disability, practices made illegal under Conn. Gen. Stat. § 46a-60(a)(5), in violation of Conn. Gen. Stat. § 46a-60(a)(5).

124.    Defendant Riccio, as Chief Steward for Defendant Union, had authority to eliminate or curtail the discriminatory and retaliatory conduct of Defendants but, despite Plaintiff's repeated requests, Defendant Riccio intentionally refused and/or failed to take any action to eliminate or curtail the discriminatory and retaliatory conduct of Defendants.

125.    Defendant Riccio, in her position as Chief Steward, helped, encouraged or compelled Defendants to engage in discriminatory employment actions against the Plaintiff including but not limited to, discipline for absences that were otherwise covered under the FMLA and lost promotional opportunities.

126.    Defendant Riccio aided and abetted Defendants in engaging in discriminatory and retaliatory employment actions in that she knew or should have known that the Plaintiff suffered from a disability but intentionally refused and/or failed to take any remedial action.

127.    As a result of Defendant Riccio's violation of C.G.S. § 46a-60(a)(5), the Plaintiff suffered damages including:  loss of employment, loss of income and wages and benefits and harm to his professional reputation.

128.     Defendant Riccio exhibited ill will, malice, improper motive and indifference to the Plaintiff's civil rights by aiding and abetting the discrimination and retaliation against him.

WHEREFORE, the Plaintiff, Curtis Reddick, demands judgment against Yale University, The Federation of University Employees, Local, 35, Unite Hire, AFL-CIO, and Meg Riccio as further set forth below.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that the Court:

1. Accept jurisdiction of this matter;

2. Empanel a jury;

3. Award the following damages and/or equitable relief:


   a. Back pay and the value of all other employment compensation and benefits in an amount to be determined by the trier of fact with interest from the dates said sums were due;

   b. Compensatory damages;

   c. Punitive damages;

   d. Attorney's fees and costs, including expert witness fees, as allowed under the ADA, C.G.S. Sec 46a-51 *et. seq.* and C.G.S. Section 31-290a.

   e.  An injunction permanently enjoining Defendants, its officers, agents, employees, successors, heirs and assigns, and all those in active concert of participation with them from engaging in any employment practice that discriminates on the basis of disability and or the filing of worker's compensation claims;

   f. Trial by jury; and

   g. Such other and further relief as this Court deems fair and equitable.


        THE PLAINTIFF
        CURTIS REDDICK
        By His Attorney:


         /s/ *Michelle Gramlich, Esq.*

        Michelle Gramlich, Esq. (CT28160)
        Employee Rights, LLC
        57 State Street
        North Haven, CT  06473
        Tel. No.: 203-936-9111

        His Attorney