# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **CURTIS REDDICK** | : | **CIVIL ACTION** |
| | : | **NO. 3:13-cv-01140 (WWE)** |
| Plaintiff, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **YALE UNIVERSITY, THE** | : | |
| **FEDERATION OF UNIVERSITY** | : | |
| **EMPLOYEES, LOCAL 35, UNITE** | : | |
| **HERE, AFL-CIO and MEG RICCIO** | : | |
| | : | |
| Defendants. | : | **January 14, 2014** |

## OBJECTIONS AND RESPONSES OF THE FEDERATION OF UNIVERSITY EMPLOYEES LOCAL 35, UNITE HERE, AFL-CIO, TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND PRODUCTION REQUESTS

Defendant The Federation of University Employees Local 35, Unite Here, AFL-CIO, ("Defendant Union") hereby objects and responds to plaintiff Curtis Reddick's First Set of Interrogatories and Production Requests as follows:

## INSTRUCTIONS AND DEFINITIONS

In answering these Interrogatories and Requests for Production furnish all information available to you, including information in the possession of your attorneys, their investigators, or any person acting on your behalf, and not merely such information as is known of your own personal knowledge.  If you cannot answer any part of these Interrogatories in full after exercising due diligence to secure the information requested, so state and answer the remainder as fully as possible, stating whatever information or knowledge you have concerning the unanswered portion or partial answered portion.

These Interrogatories and Requests for Production are to be considered continuing; you are requested to provide, by way of supplementary answers such additional information as you or

any person acting on you behalf may obtain which will augment or modify your initial answers. Such supplementary responses are to be served upon the Plaintiff within thirty (30) days of the receipt of such information.

As used herein, the following terms shall have the meanings indicated below:

a.    The words "Defendant" and "you" shall be deemed synonymous and shall be deemed to include any and all agents, servants, employees, attorneys and other representatives of the Defendant.

b.    "Person" means natural person, corporation, partnership, sole proprietorship, union, association, federation and any other kind of entity.

c.    "Document" means any printed, typewritten, handwritten, electronic or otherwise recorded matter of whatever character, including without limitation, letters, minutes, purchase orders, bills, memoranda, telegrams, notes, catalogues, brochures, diaries, reports, calendars, interoffice communications, statements, announcements, photographs, tape recordings, motion pictures, and any carbon or photographic copies of any such materials if the Defendant does not have custody or control of the originals.

d.    "Identify" means, with respect to a natural person, (1) his or her name; (2) his or her sex; (3) his or her last known home address and telephone number; (4) his or her job title; (5) his or her business address and telephone number; (6) the name and address of his or her employer; (7) or her relationship, if any to Defendant.

e.    "Identify" means with respect to a corporation, association or other entity (1) the legal name under which such entity is incorporated or registered; (2) the state in which such entity is incorporated or registered; (3) the full business address and

2

telephone number of such entity; and (4) the officers of such entity.

f.    "Identify" means with respect to documents, (1) the author thereof and the person or persons to whom the documents were originally directed; (2) the source from whom the Defendant obtained such document or documents; (3) the date of each such document; (4) the current custodian of each document or documents; (5) the location at which the document is situated; and (6) the subject matter of each such document or documents.

g.    "Admission" means an acknowledgement, either written or oral concerning a matter of fact or fact of legal interest to either the Plaintiff's or Defendant's case.

## Privilege Log

h.    All interrogatories or documents called for by this request or related to this request for which the Defendant claims a privilege or statutory authority pursuant to Fed. R. Civ. P. 26(b)(5) and Local Rule 37(a)(1) as a ground for non-production shall be listed chronologically as follows:

(1)    The name, party and designation of the party claiming the privilege.

(2)    The nature of the privilege (not conclusory allegations) citing statutory authority or protection, if applicable.

(3)    Describe the type of document or oral communication.

(4)    Describe the subject matter of the document or communication, including the names and titles of those involved.

(5)    Provide the date and place of the document or communication.

(6)     Provide the names and titles of all authors of the document or communication.

(7)     Provide the names and titles of all recipients of the document or communication.

(8)     Provide the name and title of the custodian(s) of the document.

(9)     Describe how each element of the asserted privilege is applicable to the document.

**GENERAL OBJECTIONS**:

Defendant Union objects to the preliminary instructions and definitions as overly broad, unduly burdensome and not reasonably calculated to the discovery of admissible evidence to the extent that they differ from and/or add to the definitions and instructions adopted by the Court and codified in Local Rule 26.  Plaintiff further generally objects to the extent the discovery requests seek information and/or documents protected by the work product privilege, the attorney/client privilege, any other privilege recognized by Connecticut Courts or under Connecticut common law that may be protected by Conn. Gen. Stat. §31-128f.

## INTERROGATORIES

### INTERROGATORY 1

State the name, business address, position and department within the Defendant company(s) of each and every person by name and title that assisted in preparing the answers to these Interrogatories.

### OBJECTION:

Defendant Union objects to this interrogatory because it is overly broad and is not reasonably calculated to lead to the discovery of admissible evidence.

### RESPONSE:

Subject to and without waiving this objection, the defendant responds that the answers were prepared by legal counsel Mary E. Kelly, Meg Riccio, Chief Steward, Jessica Suraci, office manager, and Deanna Strother, Administrative Assistant.  Documents produced below were also sought from other Union officials.


### INTERROGATORY 2

Describe in detail each and every grievance Plaintiff filed on behalf of himself and/or attempted to file with the Defendant during the last four (4) years, indicating who the grievance was submitted to, the date it was submitted and the steps taken on each grievance, including its disposition.

### OBJECTION:

Defendant Union objects to this interrogatory because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence to the extent that some or all of the information sought should already be within the plaintiff's

possession, custody, control or knowledge and/or is equally available to the plaintiff, and to the extent that it calls for information that may be protected by the attorney-client privilege and/or work product doctrine.

**RESPONSE:**

The defendants cannot provide complete responses to this interrogatory because the plaintiff may have submitted grievances to Yale officials on his own without notifying or copying the defendants, and/or may have submitted the grievances through various current or former union stewards, and officials, who are not available or who have refused to provide information to the defendants. Thus, the defendants may not have complete information as to each grievance that the plaintiff filed or attempted to file. Furthermore, the plaintiff has indicated that he has withdrawn certain grievances on his own, and/or has indicated that that he wanted certain grievances to be dealt with between defendant Yale and his legal counsel. Thus, the defendants may not be aware of all steps taken on certain grievances.

However, to the best of the defendants' current recollection and understanding:

Curtis Reddick filed grievance #8646 on or about 9/11/2009 by submitting the grievance directly to his supervisor, Marquis McGraw. As the plaintiff is a Union steward, he often submitted his grievances himself. According to the grievance, the plaintiff complained that he called in FMLA for Friday, 9/4/09,[1] and that his supervisor told Mr. Reddick that he would not pay him for Monday, 9/7/09. Mr. Reddick also complained that he was scheduled to work. Mr. Reddick stated that Mr. McGraw refused to sign the grievance at step one. On 9/15/2009 department steward Andy Mastriano appealed this grievance to Step 2. The grievance was heard by Robert Young on 4/6/2010 and settled by the University paying Mr. Reddick for the holiday.

---

[1] The dates on the grievances may be incorrect.

On or about 11/19/2009, the plaintiff submitted grievance #8790 alleging that his supervisor, Marquis McGraw, had spoken to Mike Roberts about Mr. Reddick's medical condition without his permission, and asking that supervisor Marquis McGraw be disciplined. Robert Young accepted the grievance at Step 2 on 11/19/2009.   Andy Mastriano is listed as steward on the grievance.  When Mastriano and defendant Riccio asked the plaintiff about this grievance, Mr. Reddick stated that it was in his lawyer's hands.  To the best of the defendants' current knowledge and understanding, Mark Wilson, a former Vice President of the Union, and Andy Mastriano met with Mr. McGraw and Mr. Reddick about this grievance.  Mr. Reddick later chose to withdraw this grievance without prejudice.  The defendants are not currently aware of the date of that withdrawal.

On or about 11/16//2009 the plaintiff submitted grievance #8787 alleging that he was being discriminated against by his supervisor, Marquis McGraw because of his disability, and asking that the discrimination stop.  Robert Young accepted the grievance at Step 2 on 11/19/2009.  When the department steward, Andy Mastriano, and defendant Riccio asked the plaintiff about this grievance, Mr. Reddick stated that it was in his lawyer's hands.  To the be best of the defendants' current knowledge and understanding, Mark Wilson, a former Vice President of the Union, and Andy Mastriano met with Mr. McGraw and Mr. Reddick about this grievance.  Mr. Reddick later chose to withdraw this grievance without prejudice.  The defendants are not currently aware of the date of that withdrawal.

The plaintiff filed grievance #8788 on or about 11/13/2009 by presenting it to Robert Young.   In this grievance, Mr. Reddick alleged that on 11/11/2009 stewards were not present at discipline meetings.  The resolution he sought was to have a Union steward present at discipline meetings.  The grievance was heard at step 2 on 4/6/2010 by Robert Young.  The grievance was

resolved when Mr. Young agreed, on behalf of Yale, that the University would have a Union

steward present at any disciplinary meetings. After the grievance had been resolved, Mr.

Reddick indicated that he was withdrawing the grievance without prejudice.

The plaintiff filed grievance #8649 on or about January 19, 2010, alleging that he was

scheduled to attend a stewards' meeting on January 7 and was told that he could not attend even

though the law school students were not back from break and no events were scheduled. Mr.

Reddick apparently left the work site despite being told that he could not attend and was given a

written warning. The grievance asked that the written warning be removed from his file and that

he be recognized as a Union Steward. The reprimand was removed and the grievance was

resolved in December 2013.

To the best of defendant Riccio's current recollection, in late September or October 2010,

Mr. Reddick left Ms. Riccio a voicemail message indicating that he was very upset about

receiving a September 27, 2010, letter in which he was notified that he had not been selected to

undergo the training for the Team Leader position, and that he would be contacting his attorney.

To the best of the defendant Riccio's current understanding and recollection, Mr. Reddick

indicated that he wanted the Union to file a grievance over this non-selection. To the best of

defendant Riccio's current recollections she contacted the plaintiff and explained that the Union

would not file a grievance because there had been no violation of the Collective Bargaining

Agreement. To the best of defendant Riccio's current recollection, at no time prior to the filing

of the CHRO charge did the plaintiff indicate that he believed that his non-selection was because

of any disability or in retaliation for any protected activity.

To the best of the defendants' current understanding and recollection, the plaintiff left a

draft grievance in the Local 35 offices in the spring of 2011. The defendants believe that it is

possible that this was grievance #7203, but are not certain. To the best of the defendant Riccio's current recollection, the grievance alleged that the complainant was being harassed by respondent Yale and denied light duty because he had medical restrictions limiting his ability to lift. Defendant Riccio reviewed the grievance to determine if there was any basis for believing that respondent Yale had violated the collective bargaining agreement. Under the collective bargaining agreement Yale does not have to create a light duty position for any employee who is unable to perform the essential duties of his or her position due to a medical condition. (See Ex. 11) In addition, the job description for the plaintiff's position indicated that the position required lifting of up to 50 pounds.

To the best of defendant Riccio's current recollection, after reviewing the draft grievance, she left several messages for the plaintiff over a two week period, explaining that the Union could not file or pursue a grievance without further information. Ms. Riccio left a voicemail message for the plaintiff in which she indicated that she needed specific information about Mr. Reddick's medical restrictions. She also explained that it would not violate the collective bargaining agreement for respondent Yale to refuse to allow the plaintiff to work if he could not safely perform the duties of his position. To the best of her current recollection, Ms. Riccio further explained that under the collective bargaining agreement, respondent Yale was not obligated to offer light duty to an employee who was not able to perform the duties of his or her position because of a medical restriction. Although Ms. Riccio asked that Mr. Reddick contact her with more information, he did not do so. Because Mr. Reddick did not provide any information suggesting that respondent Yale had violated the collective bargaining agreement, the defendants did not process the grievance further.

On or about August 4, 2011, Curtis Reddick filed grievance #2294 alleging that he had not been called in for overtime.  The grievance was resolved on or about August 25, 2011, when Yale agreed to make the plaintiff whole.

In or about early September 2011, Curtis Reddick filed grievance #2293 claiming that supervisor Greg Mitchell discriminated against him by moving him to another position.  To the best of the defendant's current understanding the plaintiff submitted the grievance to Greg Mitchell.  Greg Mitchell denied the grievance, and then held onto the grievance.  When the defendants received the grievance on October 18, 2011, the defendants appealed the grievance to the next step.  The grievance was scheduled to be heard at a combined second and third step on or about December 17, 2013.  At the meeting the plaintiff stated that he was passing on this grievance.  The grievance is considered open.

On or about September 23, 2011, the plaintiff filed grievance #9260.  In this grievance, the plaintiff alleged that he was being denied overtime with respect to the August 4, 2011, grievance.  On December 2, 2011, this was moved to Step 2.  The grievance was resolved on or about December 17, 2013.  A memo of agreement was later entered under which Yale agreed to pay 40 hours of pay to the plaintiff along with four other employees.

The plaintiff filed grievance #7778 on or about October 13, 2011.  The grievance was submitted to Gregory Mitchell.  The grievance appears to allege that another employee, Larry Daniels, was being discriminated against.  On information and belief, the grievance was withdrawn without precedent.

On information and belief, the plaintiff filed grievance #9262 with Yale on or about 11/3/11 alleging that he told his supervisor, Greg Mitchell, that he needed to leave work due to his medical condition.  These defendants do not have any record of this grievance but we have

been advised by defendant Yale that it was withdrawn without precedent.

On information and belief, the plaintiff field grievance #8310 on or about 1/3/12 with Yale, making an allegations relating to the FMLA.  These defendants have no record of this grievance but have been advised by Yale that it remains open.

The plaintiff filed grievance #9261 on or about March 28, 2012, alleging ongoing harassment by Greg Mitchell.  Reddick claimed that Mitchell's behavior and abusive misconduct violated internal policies and that Mitchell discriminated against and harassed Reddick and other employees at the Law School.  Greg Mitchell received this grievance on 3/29/12 but, according to Mr. Reddick, Mitchell refused to sign the grievance.  On information and belief, Mitchell denied the grievance on 3/29/12, then he held onto the grievance.  The grievance was scheduled to be heard at a combined second and third step on or about December 17, 2013.  At the meeting the plaintiff stated that he was passing on this grievance.  The grievance is considered open.

The plaintiff filed grievance #9704 on or about 2/1/13 alleging that the supervisor had not called him (Curtis) in on overtime.  Grievance # 9704 was submitted to Charles Nixon, who refused to sign it according to union steward Donald Spencer.  Spencer then brought the grievance to 221 Whitney Ave, Yale Labor Relations, where James Juhas, Sr. Labor Relations Representative, received the grievance.  This grievance was heard at a combined second and third step on or about 12/17/13 and settled along with grievance #9260 with an award of 40 hours of overtime pay to the plaintiff and four other employees.

The plaintiff filed grievance #9705 on or about 2/19/13 alleging that he was being retaliated against by Charles Nixon because he put in grievances for other workers.  Grievance # 9705 was submitted to Charles Nixon, who refused to sign it according to union steward Donald Spencer.  Spencer then brought the grievance to 221 Whitney Ave, Yale Labor Relations, where

James Juhas, Sr. Labor Relations Representative, received the grievance.  The grievance was scheduled to be heard at a combined second and third step on or about December 17, 2013.  At the meeting the plaintiff stated that he was passing on this grievance.  The grievance is considered open.

The plaintiff filed grievance #9712 on or about 2/19/13 alleging that Charles Nixon retaliated against him in front of other employees by stating that Reddick was not doing his job. Grievance # 9712 was submitted to Charles Nixon, who refused to sign it according to union steward Donald Spencer.  Spencer then brought the grievance to 221 Whitney Ave, Yale Labor Relations, where James Juhas, Sr Labor Relations Representative, received the grievance.  The grievance was scheduled to be heard at a combined second and third step on or about December 17, 2013.  At the meeting the plaintiff stated that he was passing on this grievance.  The grievance is considered open.

## INTERROGATORY 3

Please detail with specificity, any investigation or inquiry conducted by the Defendant, its agent, servant, employee, contractor, including investigation/inquiry other than documents or oral communications presented for legal advice during your attorney-client relationship regarding Plaintiff's claims and Defendant's defenses in this matter.  Such specificity should include, the date, nature and purpose of any such investigation or inquiry; whether any record, report, writing or e-mail was made of it, and if so the date of such; the name, address and telephone number of the person(s) and agency, company or organization conducting the investigation or inquiry; and a description of the subject matter, results and findings of any such investigation or inquiry; the names, address and telephone number of any person, agency, company or organization spoken to

relative to the aforementioned investigation/inquiry; if a claim of attorney-client or other privilege is claimed, provide the information required by "h" of the instructions.

**OBJECTION:**

Defendant Union objects to this interrogatory because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it calls for information that may be protected by the attorney-client privilege and/or work product doctrine.

**RESPONSE:**

"How a party, its counsel and agents choose to prepare their case, the efforts they undertake, and the people they interview is not factual information to which an adversary is entitled. Disclosure of this information would inevitably teach defendants which individuals the [plaintiff] considered more or less valuable as witnesses and how it was preparing for trial." United States v. District Council, 1992 U.S. Dist. LEXIS 12307 (S.D.N.Y. 1992). "The better reasoned decisions . . . are those that draw a distinction between discovery requests that seek the identification of persons with knowledge about the claims or defenses (or other relevant issues) - requests that are plainly permissible - and those that seek the identification of persons who have been contacted or interviewed by counsel concerning the case." Tracy v. NVR, Inc., 250 F.R.D. 130, 132 (W.D.N.Y. 2008); see, e.g., Seven Hanover Assoc. v. Jones Lang LaSalle Americas, Inc., 2005 U.S. Dist. LEXIS 32016, n.1 (S.D.N.Y. 2005) ("[d]efendant is free to ask for names of persons with knowledge of the facts, but is not entitled, through plaintiffs, to identification of who among such knowledgeable individuals have been interviewed by plaintiffs' attorney"); United States v. District Council of New York City and Vicinity of the United Bhd. of Carpenters, 1992 U.S. Dist. LEXIS 12307 (S.D.N.Y. Aug. 18, 1992); DiDonna v. Vill. Farms

IGA, LLC, 2012 U.S. Dist. LEXIS 126963 (E.D.N.Y. 2012).  Consequently, the plaintiff believes

that any investigation undertaken at the request of counsel or by counsel is privileged.  While a

privilege log may be required for documents, there is no legal authority requiring that a party

claiming privilege as to oral communications provide the information requested by the defendant

in subsection (h) and the defendant declines to do so.  Indeed, doing so would disclose the very

work product that the privilege is designed to protect.

Subject to and without waiving these objections, see response to interrogatory 2 and

documents attached hereto or disclosed in connection with the defendant's initial disclosures.

The defendant further states that to the best of its current recollection, the defendant

contacted various Yale officials, including Kara Tavella, John Criscuola and Roger Goode, to ask

for business records, and other documents both when the defendant received the CHRO charge

and when the defendant received the instant court case.  Any documents produced by Yale, and

any copies of e-mails have been produced or are attached hereto.

In addition, Meg Riccio and Jessica Suraci may have spoken to Robert Proto, Brian

Wingate, Donald Spencer, Robert McCormack, Tyisha Walker, and Andy Mastriani about the

claims, and the underlying fact of the lawsuit.  Finally, at various points, prior to the filing of the

CHRO charge, the Union sought specific information from the plaintiff in connection with

various grievances that he filed, as is explained in detail in response to Interrogatory Number 2.

## INTERROGATORY 4

Please detail with specificity all statements obtained by Defendant from any person concerning

the incidents alleged in the Plaintiff's complaint or Defendant's answer or defenses.  Such

specificity should include the name and address of the person who gave the statement, and the

date said statement was obtained; whether the statement was oral or written; the name and address of the person to whom the statement was made; the nature and description of the substance of each such statement; any claim of privilege shall comply with paragraph "h" of the instructions.

**OBJECTION:**

Defendant Union objects to this interrogatory because it is overly broad, unduly burdensome, vague as to the term "statement," and to the extent that it calls for information that may be protected by the attorney-client privilege and/or work product doctrine.

**RESPONSE:**

"How a party, its counsel and agents choose to prepare their case, the efforts they undertake, and the people they interview is not factual information to which an adversary is entitled. Disclosure of this information would inevitably teach defendants which individuals the [plaintiff] considered more or less valuable as witnesses and how it was preparing for trial." United States v. District Council, 1992 U.S. Dist. LEXIS 12307 (S.D.N.Y. 1992). "The better reasoned decisions . . . are those that draw a distinction between discovery requests that seek the identification of persons with knowledge about the claims or defenses (or other relevant issues) - requests that are plainly permissible - and those that seek the identification of persons who have been contacted or interviewed by counsel concerning the case." Tracy v. NVR, Inc., 250 F.R.D. 130, 132 (W.D.N.Y. 2008); see, e.g., Seven Hanover Assoc. v. Jones Lang LaSalle Americas, Inc., 2005 U.S. Dist. LEXIS 32016, n.1 (S.D.N.Y. 2005) ("[d]efendant is free to ask for names of persons with knowledge of the facts, but is not entitled, through plaintiffs, to identification of who among such knowledgeable individuals have been interviewed by plaintiffs' attorney"); United States v. District Council of New York City and Vicinity of the United Bhd. of

Carpenters, 1992 U.S. Dist. LEXIS 12307 (S.D.N.Y. Aug. 18, 1992); DiDonna v. Vill. Farms

IGA, LLC, 2012 U.S. Dist. LEXIS 126963 (E.D.N.Y. 2012).  Consequently, the plaintiff believes

that any investigation undertaken at the request of counsel or by counsel is privileged.  Subject to

and without waiving these objections, to the best of the defendant's current recollection, the

Union has no written or recorded statements from any witness.


**INTERROGATORY 5**

State the name of all employees who were selected for the initial phase of the Team Leader

Program, including the following information:

     a.   Noting each employee who is known to suffer from a disability;

     b.   Noting each employee who was placed into a Team Leader Position;

     c.   Noting each employee who was not placed into a Team Leader Position.

**OBJECTION:**

     Defendant Union objects to this interrogatory because it is overly broad, unduly

burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, vague

as to the time period covered by the request, and to the extent that the request calls for highly

personal, sensitive and/or confidential information and/or information that may be protected by

Conn. Gen. Stat. §31-128f.

**RESPONSE:**

     To the best of the defendants' current understanding and recollection, the following

persons were selected to take part in the initial phase of the Team Leader program:

Jackie Ferriola, Vondeen Ricks, James Moore, Keith Stancil, James Carr, Winsome Watson,

Belinda Franklin, Gary Henderson, Dorothy Jackson, Daniel Lee, Tassoula Nicolaou, Robert

Proto, Danielle Ravis, Curtis Reddick, Thomas Rogers, Gregory Sutton, and Reggie Taylor.  To the best of the defendant's current understanding and recollection, Jackie Ferriola, Vondeen Ricks, James Moore, Keith Stancil, James Carr, and Winsome Watson were selected to fill the first six openings in 2009.  The remaining employees were all invited to take part in refresher training in March 2010.  Belinda Franklin, Gary Henderson, Daniel Lee, Tassoula Nicolaou, Robert Proto, Danielle Ravis, Thomas Rogers, Gregory Sutton, and Reggie Taylor were selected for Team leader positions after this training.  Reddick and Jackson were not selected for a position.

The defendants cannot answer subsection A, in that the determination of whether or not a medical condition is or is not a disability is a legal determination based in part on detailed medical information and on how that medical condition impacts the specific individual.   The defendants generally do not seek and are not provided with such information about their members.  The defendants are aware that Reddick contends that he has a disability, but he has failed and refused to produce medical evidence or information from which the defendants could make a determination as to whether he, in fact, is disabled.


**INTERROGATORY 6**

Please state in detail the date, time and name of the individual(s) who interviewed the Plaintiff in September 2010 during the final phase of the CTL program.

**OBJECTION:**

Defendant Union objects to this interrogatory to the extent that some or all of the information sought should already be within the plaintiff's possession, custody, control or knowledge and/or is equally available to the plaintiff.

**RESPONSE:**

To the best of the defendants' current understanding and recollection, the plaintiff was interviewed by Brian Wingate, Meg Riccio, Robert Young, and Steve Percival on September 16, 2010 at 1:30 pm.

**INTERROGATORY 7**

Please state in detail how it was determined that the Plaintiff was absent from any one of the days during the mandatory 3-day training session in March of 2010.

**OBJECTION:**

Defendant Union objects to this interrogatory because it is not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that some or all of the information sought should already be within the plaintiff's possession, custody, control or knowledge and/or is equally available to the plaintiff.

**RESPONSE:**

To the best of the defendants' current understanding and recollection, the defendants determined that the plaintiff was absent from the training because defendant Meg Riccio was present at the training.  She observed that plaintiff Curtis Reddick was at the first day of training when it started.  She also observed that the plaintiff got up and left in the morning.  He said nothing to Riccio or, to the best of her understanding and knowledge, to anyone else.  He never returned to the training, that day or any other day.

**INTERROGATORY 8**

Please state in detail what issues Defendant was aware of that Plaintiff had with Yale University,

18

as admitted in its Answer to the CHRO dated November 4, 2011, paragraph 13.

**OBJECTION:**

Defendant Union objects to this interrogatory because it is not reasonably calculated to lead to the discovery of admissible evidence, and vague and confusing insofar as Defendant Yale did not file an Answer to the CHRO dated November 4, 2011, but rather its Answer to the CHRO was dated October 6, 2011.

**RESPONSE:**

To the best of the defendants' current understanding and recollection, the defendant was aware that the plaintiff had concerns that defendant Yale was not, in all instances, following the collective bargaining agreement.  In particular, the defendants were aware that the plaintiff had filed a number of grievances and complaints against Yale over the years about the treatment he had allegedly received by various supervisors (see response to Interrogatory Number 2).   The plaintiff, however, reported to the defendants he had an attorney handling the complaints for him and that he did not need help from the defendants.


**INTERROGATORY 9**

State the name of each and every employee who completed the application process in June, 2009.

**OBJECTION:**

Defendant Union objects to this interrogatory because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, vague as to which "application process" the request refers, and to the extent that the request calls for information that may be protected by Conn. Gen. Stat. §31-128f.

**RESPONSE:**

The defendants do not currently recall the names of each and every employee who completed the application process in 2009. To the best of the defendants' current understanding and recollection, the applications were initially submitted to defendant Yale, and defendant Yale retained any copies after the process was complete. The defendant can recall only that the persons identified in response to Interrogatory Number Five applied.

**INTERROGATORY 10**

As admitted in Defendant's Answer to the CHRO dated November 4, 2011, Paragraph 26, state the name of all Defendant individuals who held knowledge of the filing of Plaintiff's November 13, 2009 grievance.

**OBJECTION:**

Defendant Union objects to this interrogatory because it is vague and confusing insofar as Defendant Yale did not file an Answer to the CHRO dated November 4, 2011, but rather its Answer to the CHRO was dated October 6, 2011. Defendant Union also objects to this interrogatory because it is overly broad, unduly burdensome and is not reasonably calculated to lead to the discovery of admissible evidence.

**RESPONSE:**

This question is impossible to answer because Paragraph 26 of the plaintiff's CHRO complaint references a November 24, 2009 "complaint" and this interrogatory references a November 13, 2009 "grievance."

**INTERROGATORY 11**

State what steps, if any, were taken regarding Plaintiff's November 13, 2009 grievance, including, but not limited to noting any and all investigations, meetings, submissions, emails, and communications with any employee of Yale University, requests for medical records or other steps taken regarding the submitted grievance.

**OBJECTION:**

Defendant Union objects to this interrogatory because it is overly broad, unduly burdensome and is not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it calls for information that may be protected by the attorney-client privilege and/or work product doctrine.

**RESPONSE:**

See Response to Interrogatory number 2.


**INTERROGATORY 12**

State in detail all customary and usual procedures utilized by the Defendant in responding to member complaints of disability discrimination.

**OBJECTION:**

Defendant Union objects to this interrogatory because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, vague and ambiguous as to the terms "customary and usual procedures" and "member complaints of disability discrimination," and to the extent that it calls for information that may be protected by the attorney-client privilege and/or work product doctrine.

**RESPONSE:**

To the best of the defendants' current understanding and recollection, there is no set procedure utilized by the Union when a member complains of disability discrimination. This is because complaints can be made to variety of individuals, including stewards like the plaintiff, and complaints can be made a part of a grievance or outside of the collective bargaining agreement. When a complaint is made as part of a grievance, and is submitted to defendant Riccio, she generally tries to determine if there has been any breach of the collective bargaining agreement. This would usually entail asking for sufficient information from the member in order to determine if the condition could be a disability, if the employee is able to perform the duties of the position at issue either with no accommodation or with a reasonable accommodation, and if any provision of the collective bargaining agreement has been violated. If the defendants believe the CBA has been violated, and if the grievance is timely, the defendants would usually pursue the grievance and/or attempt to resolve it.

Defendant Riccio will usually also try to tell the employee of his or her right to file a complaint with Valerie Stanley, the Equal Opportunity official for Yale University, and/or to file a complaint with the CHRO with the State of CT if they believe that Yale has not handled the case correctly. However, if the employee tells Riccio that he/she already has an attorney representing him or her with respect to these issues, Riccio might not offer such advice.

## REQUESTS FOR PRODUCTION

1.      Copies of any documents, notes, memorandums, compilations or other form written or electronic, including files kept in storage, that were relied upon in answering the above interrogatories.

22

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it calls for documents that may be protected by Conn. Gen. Stat. §31-128f, the attorney-client privilege and/or work product doctrine.

**RESPONSE:**

See attached and see documents produced in connection with defendants' initial disclosures, with plaintiff's initial discovery and/or with Yale's initial disclosures.

2.      Any and all written or oral statements or stenographic, mechanical, electrical or other recording or transcription thereof made by any person, including any party to this case concerning any paragraph, claim or count of this action or its subject matter.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it calls for documents that may be protected by Conn. Gen. Stat. §31-128f, the attorney-client privilege and/or work product doctrine.

**RESPONSE:**

See attached and see documents produced in connection with defendants' initial disclosures, with plaintiff's initial discovery and/or with Yale's initial disclosures.

3.      Any and all personnel, disciplinary or any other type of files, notes, folders, listings, compilations or other form written or electronic maintained by the Defendant concerning or

relating to the Plaintiff, including files that are kept in storage in paper or electronic form throughout Plaintiff's employment.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it calls for documents that may be protected by the attorney-client privilege and/or work product doctrine.

4.      Produce all documents in response to Interrogatory No. 6, including any notes, memorandums, grading criteria or any other documents indicative that Plaintiff was interviewed in September, 2010 as part of Defendant's final phase of the CTL program.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it calls for documents that may be protected by the attorney-client privilege and/or work product doctrine.

**RESPONSE:**

See attached and see documents produced in connection with defendants' initial disclosures, with plaintiff's initial discovery and/or with Yale's initial disclosures.

5.      Produce all documents response to Interrogatory No. 7, including any notes, memorandums, attendance criteria or any other documents indicative that Plaintiff was not present at any CTL program training sessions.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it calls for documents that may be protected by the attorney-client privilege and/or work product doctrine.

**RESPONSE:**

To the best of the defendants' current understanding and recollection, the defendants do not have any such documents, other than documents produced by the plaintiff or defendant Yale in connection with their initial disclosures.


6.      Any and all medical, FMLA or any other type of files, notes, folders, listings, compilations or other form written or electronic maintained by the Defendant concerning or relating to the Plaintiff, including files that are kept in storage in paper or electronic form during the last five (5) years.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, is duplicative of other requests, and to the extent that it calls for documents that may be protected by the attorney-client privilege and/or work product doctrine.

**RESPONSE:**

The defendants do not keep FMLA, personnel or disciplinary files on members.  The defendant does retain grievance documents and some e-mails relating to the plaintiff which have been produced herewith or in response to the defendant's initial disclosures.

7.      Copy of any Collective Bargaining Agreement relative to Plaintiff's employment with Yale University in effect during the last four (4) years.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that some or all of the documents sought should already be within the plaintiff's possession, custody, control or knowledge and/or are equally available to the plaintiff.

**RESPONSE:**

See attached and see documents produced in connection with defendants' initial disclosures, with plaintiff's initial discovery and/or with Yale's initial disclosures.


8.      Any and all memos, notes, letters, correspondence, e-mails or other documents written or electronic from all sources concerning any notifications, requests, directives of any kind as they pertain to Plaintiff's work assignments during the last four (4) years.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it calls for documents that may be protected by the attorney-client privilege and/or work product doctrine.

**RESPONSE:**

See attached and see documents produced in connection with defendants' initial disclosures, with plaintiff's initial discovery and/or with Yale's initial disclosures.

9.      Any and all letters, notes, memos, correspondence, e-mails or reports written or electronic relating to investigation(s) and/or inquiries conducted relative to the Plaintiff and the name(s) of those entities, organizations and persons conducting such investigation/inquiry during the last five (5) years.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it calls for documents that may be protected by the attorney-client privilege and/or work product doctrine.

**RESPONSE:**

See attached and see documents produced in connection with defendants' initial disclosures, with plaintiff's initial discovery and/or with Yale's initial disclosures.


10.     Any and all diaries, logs, notes, journals, e-mails or stenographic, mechanical, electronic or other recording prepared by the Defendant, or its employees, agents or servants, concerning the Plaintiff's employment and/or his medical conditions during the last five (5) years.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, is duplicative of other requests, and to the extent that it calls for documents that may be protected by the attorney-client privilege and/or work product doctrine.

**RESPONSE:**

See attached and see documents produced in connection with defendants' initial disclosures, with plaintiff's initial discovery and/or with Yale's initial disclosures.

11.     Provide a list of the name, title and qualification of each individual who assessed and/or graded any applicant during the June, 2009, March, 2010 and September, 2010, Team Leader Program initiative.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it calls for information and/or documents that may be protected by Conn. Gen. Stat. §31-128f.

**RESPONSE:**

To the best of the defendants' understanding and current recollection, it has no such list.

12.     Provide a copy of the scores received by all employee participants/applicants to the Team Leader interview process and training process during the last four (4) years.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it calls for information and/or documents that may be protected by Conn. Gen. Stat. §31-128f.

**RESPONSE:**

To the best of the defendants' understanding and current recollection, the defendants did not retain any applications, records, training documents, scores or other records concerning the

Team Leader interview process.  The defendants believe that it is possible that such records were, at least initially, retained by defendant Yale and has requested copies of all records from defendant Yale.  Any documents received have been produced as part of the initial disclosure or are attached hereto.

13.     Provide a list of all applicants in June, 2009, March 2010 and September 2010, who applied for and were granted access to the Team Leader Program.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it calls for information and/or documents that may be protected by Conn. Gen. Stat. §31-128f.

**RESPONSE:**

To the best of the defendants' understanding and current recollection, the defendants did not retain any applications, records, training documents, scores or other records concerning the Team Leader interview process.  The defendants believe that it is possible that such records were, at least initially, retained by defendant Yale and has requested copies of all records from defendant Yale.  Any documents received have been produced as part of the initial disclosure or are attached hereto.  See response to Interrogatory No. 5.

14.     Provide a list of the names of each of the applicants who were selected as a Team Leader following the June, 2009, March, 2010 and September, 2010, Team Leader Training Program.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is

not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it

calls for information and/or documents that may be protected by Conn. Gen. Stat. §31-128f.

**RESPONSE:**

To the best of the defendants' understanding and current recollection, the defendants did

not retain any applications, records, training documents, scores or other records concerning the

Team Leader interview process.  The defendants believe that it is possible that such records were,

at least initially, retained by defendant Yale and has requested copies of all records from

defendant Yale.  Any documents received have been produced as part of the initial disclosure or

are attached hereto.  See Response to Interrogatory No. 5.


15.    Provide a copy of the attendance logs, sign-in sheets and/or other documents utilized to

track employee participation for all Team Leader Training sessions from 2009 to present date.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is

not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it

calls for information and/or documents that may be protected by Conn. Gen. Stat. §31-128f.

**RESPONSE:**

To the best of the defendants' understanding and current recollection, the defendants did

not retain any applications, records, training documents, scores or other records concerning the

Team Leader interview process.  The defendants believe that it is possible that such records were,

at least initially, retained by defendant Yale and has requested copies of all records from

defendant Yale.  Any documents received have been produced as part of the initial disclosure or

are attached hereto.

16.     Copy of any and all communication sent out to any member or non-member regarding the

Team Leader program, interviews, training, openings, applications, denials, promotions or other

related documents in paper and/or electronic during the last four (4) years.

**OBJECTION:**

     Defendant Union objects to this request because it is overly broad, unduly burdensome, is

not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it

calls for information and/or documents that may be protected by Conn. Gen. Stat. §31-128f.

**RESPONSE:**

     To the best of the defendants' understanding and current recollection, the defendants did

not retain any applications, records, training documents, scores or other records concerning the

Team Leader interview process.  The defendants believe that it is possible that such records were,

at least initially, retained by defendant Yale and has requested copies of all records from

defendant Yale.  Any documents received have been produced as part of the initial disclosure or

are attached hereto.


17.     Copy of all applications submitted for any Team Leader Position during the last four (4)

years.

**OBJECTION:**

     Defendant Union objects to this request because it is overly broad, unduly burdensome, is

not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it

calls for information and/or documents that may be protected by Conn. Gen. Stat. §31-128f.

**RESPONSE:**

To the best of the defendants' understanding and current recollection, the defendants did not retain any applications, records, training documents, scores or other records concerning the Team Leader interview process.  The defendants believe that it is possible that such records were, at least initially, retained by defendant Yale and has requested copies of all records from defendant Yale.  Any documents received have been produced as part of the initial disclosure or are attached hereto.

18.    Provide a copy of the name of all Defendant employees placed into a Team Leader position during the last four (4) years.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, is duplicative of other requests, and to the extent that it calls for information and/or documents that may be protected by Conn. Gen. Stat. §31-128f.

**RESPONSE:**

To the best of the defendants' understanding and current recollection, the defendants did not retain any applications, records, training documents, scores or other records concerning the Team Leader interview process.  The defendants believe that it is possible that such records were, at least initially, retained by defendant Yale and has requested copies of all records from defendant Yale.  Any documents received have been produced as part of the initial disclosure or are attached hereto.  See Response to Interrogatory No. 5.

19.    Provide a copy of the interview notes for all Defendant employees who were interviewed for participation in and/or placement into, a Team Leader Position during the last four (4) years.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, is duplicative of other requests, and to the extent that it calls for information and/or documents that may be protected by Conn. Gen. Stat. §31-128f.

**RESPONSE:**

To the best of the defendants' understanding and current recollection, the defendants did not retain any applications, records, training documents, scores or other records concerning the Team Leader interview process.  The defendants believe that it is possible that such records were, at least initially, retained by defendant Yale and has requested copies of all records from defendant Yale.  Any documents received have been produced as part of the initial disclosure or are attached hereto.

20.    Provide a copy of the recommendations for all Defendant employees who were interviewed for participation in and/or placement into, a Team Leader Position during the last four (4) years.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, is duplicative of other requests, and to the extent that it calls for information and/or documents that may be protected by Conn. Gen. Stat. §31-128f.

**RESPONSE:**

To the best of the defendants' understanding and current recollection, the defendants did not retain any applications, records, training documents, scores or other records concerning the Team Leader interview process. The defendants believe that it is possible that such records were, at least initially, retained by defendant Yale and has requested copies of all records from defendant Yale. Any documents received have been produced as part of the initial disclosure or are attached hereto.

21.     Provide a copy of any grading, chart, point value, or other means of assessing Team Leader Candidates utilized in any selection process for participation in and/or placement into, a Team Leader position during the last four (4) years.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, is duplicative of other requests, and to the extent that it calls for information and/or documents that may be protected by Conn. Gen. Stat. §31-128f.

**RESPONSE:**

To the best of the defendants' understanding and current recollection, the defendants did not retain any applications, records, training documents, scores or other records concerning the Team Leader interview process. The defendants believe that it is possible that such records were, at least initially, retained by defendant Yale and has requested copies of all records from defendant Yale. Any documents received have been produced as part of the initial disclosure or are attached hereto.

22.     Copies of all complaints and/or grievances filed with Defendant by any individual concerning Supervisor Greg Mitchell.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that it calls for highly personal, sensitive and/or confidential information and/or information that may be protected by Conn. Gen. Stat. §31-128f.


23.     Copies of all electronic documents, including emails, between any Defendant employee and any Yale University employee regarding the Plaintiff, during the last four (4) years.

**OBJECTION:**

Defendant Union objects to this request because it is overly broad, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence and is duplicative of other requests.

**RESPONSE:**

See attached and see documents produced in connection with defendant's initial disclosures, with plaintiff's initial disclosures, and/or with Yale's initial disclosures.

DEFENDANT YALE UNIVERSITY,
FUE LOCAL 35, UNITE HERE, AFL-CIO,

By: _____
Gregg D. Adler ct05698
Mary E. Kelly ct07419
Livingston, Adler, Pulda, Meiklejohn
& Kelly, P.C.
557 Prospect Avenue
Hartford, CT 06105-2922
(860) 233-9821
gdadler@lapm.org
mekelly@lapm.org

## VERIFICATION

I, _____Meg Riccio_____, on behalf of The Federation of University Employees

Local 35, Unite Here, AFL-CIO, certify that the above responses to First Set of Interrogatories

are correct to the best of my knowledge and belief.


Name: Meg Riccio
Title: Chief Steward


Subscribed and sworn to before me this
_1 On_ day of January, 2014.

_____
Commissioner of the Superior Court

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Defendant Federation of University Employees Local 35, UNITE HERE, AFL-CIO's Objections and Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents have been sent by first-class, postage pre-paid mail on this 14th day of January, 2014, to the following counsel of record:

Michelle Gramlich
Employee Rights, LLC
57 State Street, 2nd Fl.
North Haven, CT  06473

Patrick M. Noonan, Esq.
Donahue, Durham & Noonan, P.C.
Concept Park, Suite 306
741 Boston Post Road
Guilford, CT 06437

_____
Gregg D. Adler