# Yale University

Office of the General Counsel
PO Box 208255
New Haven CT 06520-8255

T 203 432-4949   F 203 432-7960

*courier*
2 Whitney Avenue, 6th floor
New Haven CT 06510

**VIA FEDERAL EXPRESS**

September 30, 2011

Ms. Pekah Wallace
Regional Manager
Commission on Human Rights and Opportunities
West Central Region Office
55 West Main St., Suite 210
Waterbury, CT  06702-2004

      Re:    <u>Curtis Reddick v. Yale (CCHRO #1230051)</u>

Dear Ms. Wallace:

      The University submits the following response to the complainant's allegations in the above-captioned amended complaint dated September 1, 2011:

AFFIRMATIVE DEFENSE

      The Commission lacks jurisdiction over the majority of this complaint because most of the allegations relate to events that occurred more than 180 days prior to its filing.  Under Section 46a-82(f) of the Connecticut General Statutes, "[a]ny complaint filed pursuant to this section must be filed within one hundred and eighty days after the alleged act of discrimination…"  All of the alleged acts of discrimination in this complaint against the University[1], other than the events of March 2011 and following, occurred well beyond 180 days prior to the filing of the complaint and accordingly should not be considered by the Commission.

REQUEST FOR DISMISSAL UNDER MERIT ASSESSMENT REVIEW

      Without waiving its affirmative defense, the University respectfully requests dismissal of this complaint pursuant to the Commission's merit assessment review procedure.  There is no credible evidence that the complainant was discriminated against on the basis of disability or that he suffered any retaliation.  The complainant was afforded the opportunity to apply for and take medical leaves of absence and was not disciplined for doing so.  He was counseled appropriately for attendance issues that arose when he was not on an approved leave.  Moreover, all

---

[1] The University is not answering on behalf of Unite Here, Local 35 or Meg Riccio.

Pekah Wallace
September 30, 2011
Page 2

employment decisions by the University regarding the complainant were based on his performance and were not discriminatory in any way.

Accordingly, there is no reasonable possibility that further investigation would result in a finding of reasonable cause, and the complaint should be reviewed out under the Commission's merit assessment review process.

RESPONSE TO COMPLAINT AFFIDAVIT

1.      Admit the complainant is over 18.

2.      See responses below.

3.      Admit.

4.      Admit.

5.      Admit that the University is located in New Haven, Connecticut and that it employs more than 15 employees.

6.      The University is a party separate and distinct from Meg Riccio and Unite Here ("the Union").

7.      Admit that the complainant was first employed by the University in 1990.  Deny that his performance has always been above average and satisfactory.

8.      Deny information or knowledge sufficient to admit or deny this allegation. Admit that the complainant has at times presented sufficient documentation to qualify for medical leaves under the Family and Medical Leave Act. The complainant has never requested an accommodation under the Americans with Disabilities Act.

9.      Deny information or knowledge sufficient to admit or deny this allegation.

10.     Admit that the complainant requested and was granted an intermittent medical leave in November 2009, which ran through May 2010.  See response to paragraph 11 for a full history of the complainant's leaves.

11.     Deny that the complainant has continuously been on a medical leave since 2008. The complainant first applied for and was granted a full leave based on medical conditions which began on January 20, 2009, and which, based on the medical documentation presented, expired on February 1, 2009.  The complainant next applied for and was granted an intermittent leave which began on November 10, 2009, and which expired on May 10, 2010. When a request for intermittent leave fails to indicate an end date, the leave, consistent with applicable law and regulations, is approved for six months.  Further documentation is required to extend the

Pekah Wallace
September 30, 2011
Page 3

intermittent leave. End dates are clearly noted in the forms provided to employees. The complainant's next leave, a full leave, began on January 21, 2010, and ran through February 18, 2010. The complainant requested and was granted another intermittent leave, which began on March 21, 2010, and ran through September 21, 2010. On September 24, 2010, the complainant was granted an intermittent caregiver leave under the FMLA, which ran through November 5, 2010. On April 26, 2011, the complainant's request for another intermittent leave was granted, and this leave runs through October 26, 2011. Copies of the complainant's leave forms are attached as Exhibit A.

12.     The University was aware of the complainant's meeting the requirements for Family and Medical Leave when he was approved for the leaves described above.

13.     Deny.

14.     Deny the complainant was or continues to be subject to a hostile environment. The University is a party distinct and separate from the Union.

15.     Deny.

16.     This allegation is untimely. In each instance of an untimely allegation, without waiving its affirmative defense, the University will respond substantively in an effort to provide the Commission with the factual information necessary to establish there is no reasonable possibility that further investigation will result in a finding of reasonable cause. Deny that Mr. McGraw falsely accused the complainant of not performing his job. Instead, Mr. McGraw met with the complainant to ask him about a complaint from a client about a bathroom's not having been cleaned adequately.

17.     This allegation is untimely. The University denies the relevance of this allegation. Mr. McGraw simply met with the complainant to discuss a complaint from a client.

18.     This allegation is untimely. Admit that the complainant made a report to the Dean of the Law School

19.     This allegation is untimely. Admit that Mr. McGraw reiterated to the complainant the appropriate reporting chain. The complainant failed to report his complaint to Mr. McGraw's supervisor, which is the normal protocol. The complainant was not disciplined for his not having followed protocol.

20.     This allegation is untimely. The complainant received no discipline related to this incident.

21.     This allegation is untimely. Deny.

Pekah Wallace
September 30, 2011
Page 4

22.     This allegation is untimely.  The complainant was not on a leave in the fall of 2009 until November , and his attendance during the period that he was not on leave was unsatisfactory.  Human Resources representatives repeatedly reminded the complainant that he was not on a leave and repeatedly encouraged him to complete the appropriate paperwork. He did not do so until late November 2009.

23.     This allegation is untimely. Deny.

24.     This allegation is untimely.  See response to paragraph 22 above.  The complainant was counseled—not formally disciplined—for unsatisfactory attendance when he was not on leave.

25.     This allegation is untimely. Deny.  See response to paragraph 22 above.

26.     This allegation is untimely. Admit the complainant submitted a complaint letter. His complaint was investigated by the University's Office for Equal Opportunity Programs. After investigation, that Office concluded that there was no harassment, discrimination or retaliation.

27.     This allegation is untimely. The University lacks knowledge sufficient to admit or deny this paragraph.

28.     This allegation is untimely.  The complainant was not singled out in being asked to wash windows.  All custodial units were asked to assign several employees to assist in a University-wide window-cleaning project. No employee—including the complainant—was required to assist in the project.  The complainant refused, and he therefore was not reassigned.

29.     This allegation is untimely Admit the complainant's attorney at that time sent a letter to the University.  That letter speaks for itself.

30.     This allegation is untimely. Deny the relevance of the letter to any treatment of the complainant.

31.     All allegations related to the Custodial Team Leader Program ("CTL Program") are untimely.  Admit that the University and Local 35, Unite Here, jointly developed a Custodial Team Performance and Leadership Program, creating lead positions, with the additional responsibility of leading and directing the custodial staff in an assigned area.  The document describing this program is attached as Exhibit B. All senior custodians were eligible for consideration for the positions, but there was no guarantee that each would be successful in being placed in the position.  There was an interview and training process, both of which were assessed and graded by a team of University management individuals and union representatives.

32.     See above and Exhibit B.

Pekah Wallace
September 30, 2011
Page 5

33.     The CTL program has had three phases.  In its initial phase, which took place in June 2009, individuals who were successful in the interview phase of the program were required to attend a 2-week training session; during the training sessions, the applicants continued to be assessed.  The complainant was successful in the interview during this phase, and he completed the training.  As there were originally only 6 positions available, only the top 6 candidates were place in the team leader positions.  The complainant was not one of these top 6.

The second phase of the program was in March 2010.  This was open to all of the applicants who had completed the 2009 training.  Candidates were informed that they were required to attend each of a 3-day mandatory training session.  The complainant left early on the first day and failed to attend the final two days and therefore was not eligible for one of the positions.

There was a final phase of the CTL program in September 2010.  Again, the complainant was eligible for consideration.  He presented poorly in the interview and therefore did not receive from the panel of Union and University interviewers a score high enough to progress to the training session.

34.     See responses above.

35.     See response above.

36.     See responses above.

37.     See responses above.

38.     See responses above.

39.     See responses above.

40.     Deny.

41.     See responses above.

42.     Deny.

43.     The letter regarding the third phase of the CTL program is attached as Exhibit C.

44.     The University is a party separate and distinct from Meg Riccio and the Union. This allegation does not involve the University.

45.     See response to paragraph 44 above.

Pekah Wallace
September 30, 2011
Page 6

46.   See response to paragraph 44 above.

47.   The allegation is untimely. See response to paragraph 33 above. The last phase of the program was in September 2010.

48.   Admit that the complainant was out of work for several days in February 2011.

49.   Admit that the complainant took sick days in late February and early March 2011.

50.   Admit that the complainant worked several days in early March 2011 but he took 14 sick days that month. He was not on a medical leave during either February or March of 2011.

51.   Admit that the complainant presented a doctor's note dated April 11, 2011 that noted a lifting restriction of 5 pounds and a restriction on work above shoulder level for the right arm. This note followed an earlier note of March 23, 2011 noting a restriction of no sustained heavy lifting.

52.   Deny that the complainant was able to perform the essential functions of his position.

53.   Admit that as soon as the complainant's supervisor, Gregory Mitchell, learned about the lifting restriction, he and Robert Young, Director, Facilities Services, informed the complainant that, because he was unable to perform the essential functions of the position, he should continue on a full medical leave. The job description for Senior Custodian is attached as Exhibit D.

54.   See Exhibit D. The complainant's lifting restriction made it impossible for him to perform the essential functions of the position.

55.   Deny the complainant was inappropriately forced out of the workplace. He was unable to perform the essential functions of the position.

56.   Deny that the complainant was able to perform the essential functions of the position.

57.   Deny that the complainant was able to perform the essential functions of the position.

58.   Deny that the complainant was able to perform the essential functions of the position.

Pekah Wallace
September 30, 2011
Page 7

59.     The University is a party distinct and separate from the Union and Meg Riccio. This allegation does not involve the University.

60.     See response to paragraph 59.

61.     See response to paragraph 59.

62.     See response to paragraph 59.

63.     See response to paragraph 59.

64.     Admit.  The University's Office of the General Counsel received the complaint on August 18, 2011.

65.     Admit that Mr. Mitchell held a meeting with his employees on September 1.  Mr. Mitchell had no notice of the complainant's CHRO action until he was so informed on September 8, 2011, after the University's receipt of the amended complaint.  As a result, any action by Mr. Mitchell prior to September 8 cannot be in retaliation for the complainant's filing of his original complaint.

66.     Mr. Mitchell, as he is entitled, reassigned the complainant to other duties within the same building. Other employees' assignments were also changed.

67.     See response above.

68.     Deny Mr. Mitchell made any threats.  Mr. Mitchell informed the complainant that moving job duties is within the supervisor's rights.

69.     Deny that the complainant has no schedule or assignment.  Attached as Exhibit E is the assignment provided the complainant by Mr. Mitchell.  Admit that Mr. Mitchell, as the supervisor, may assign duties to his employees.

70.     Deny.

71.      Deny.

72.     Deny the University has discriminated or retaliated against the complainant in any way.

73.     Deny.

74.     Deny.

Pekah Wallace
September 30, 2011
Page 8

      75.    Deny.

      76.    Deny.

      77.    Deny.

* * *

Please note that all correspondence in this matter should be directed to Caroline G. Hendel, Associate General Counsel, Yale University, Office of the Vice President and General Counsel, Whitney Grove Square, 2 Whitney Ave. – 6th Floor, P.O. Box 208255, New Haven, CT 06520-8255.

Please be advised that this letter is confidential and is submitted pursuant to the University's policy of full cooperation with the Connecticut Commission on Human Rights and Opportunities. The information provided should not be disclosed or turned over to any person except the complainant and those Commission personnel who must review the information in connection with your investigation of the instant complaint. If disclosure of this information is requested from any other source, I hereby request to be advised by the Commission of such a request and the Commission's proposed response prior to any action being taken on such request.

I trust that the foregoing will be sufficient to resolve this complaint. However, if any further information or documentation is desired, please let me know.

Sincerely,

Caroline G. Hendel
Associate General Counsel

CGH:dfg
Attachments

## VERIFICATION

I, Robert Young, Director of Facilities Operations, verify the information in Yale University's answer to the Amended Complaint in *Curtis Reddick v. Yale University,* CCHRO #1230051 and certify that the information is to the best of my knowledge accurate.

_____
Robert Young

Sworn and subscribed to before me
this 30th day of September, 2011.


Notary Public   Lourdes O'Neil Haynes
                My Comm Expires 11/30/12

CCHRO #1230051

## CERTIFICATE OF SERVICE

I, Caroline G. Hendel, Associate General Counsel of Yale University, hereby certify that I have on September 30, 2011, served a copy of the foregoing Response on the complainant by causing a copy of the same to be mailed certified mail, return receipt requested to:  Michelle Gramlich, Esq., Employee Rights, LLC, 57 State Street, North Haven, CT  06473.


_____
Caroline G. Hendel

# EXHIBIT A

**ppdev**
Policies, Procedures, Forms, Guides, & Quick Steps
# Yale University Forms

## Form 3501 FR.50
## Leave of Absence Application
Revision Date: 10/3/06

[X] Initial Application    [ ] Application for Extension

Employee: CURTIS REDDICK    Title: _____    Phone #: 535·1607
Supervisor: ROGER WATSON    Title: _____    Phone #: 432·4864

### Employee's Request
Dates 1/20/09 to 2/1/09

**A.** [X] **Disability:**
  [X] Non-job connected illness or injury  [ ] Pregnancy  (due date: _____)
    [ ] Intermittent    [ ] Reduced Schedule

**B.** [ ] **Child Rearing:**
  [ ] Maternity  [ ] Paternity  [ ] Adoption  (due date: _____)
to

**C.** [ ] **Caregiver**
  [ ] Parent  [ ] Spouse
  [ ] Child  [ ] Partner in a Civil Union
    [ ] Intermittent  [ ] Reduced Schedule
to

**D.** [ ] **Military**
to

**E.** [ ] **Other / Personal (good cause)**
to

Explanation: _____

*(stamped, sideways:)* 2009 FEB -5 A 11:5   YALE UNIVERSITY

**All supporting documents required by the University must be attached (see instructions)**
I understand that my job [X] will be held for me until 2/1/09 ; [ ] will not be held for me. I understand the conditions under which a leave of absence may be granted and I affirm that the above statements and those contained in the supporting documents are true to the best of my knowledge. I also understand that I may not accept work from another employer during the period covered, without the express approval of the University.

Signature _Curtis Reddick_    (Employee)    Date 1-22-09

### Supervisor's Recommendation
I recommend that the University [ ] grant [ ] deny this leave of absence.  His / her job will be held until _____
[ ] will not be held.  The employee [ ] should [ ] should not be granted University approval to accept work from another employer during the covered period.

Signature _____    Ext _____    Date _____
Title _____
Comments _____

### Department Head or Administrator
I have reviewed this request and recommend that it be [ ] granted  [ ] denied and hereby submit the form to Human Resources for final review.

Signature _(signature)_    Ext 27547    Date 2·3·09
Title Director of B
Comments _____

### Client Support
**Department of Human Resources Disposition**
I have reviewed the request and the request shall be [X] granted [ ] denied [X] FMLA designated.

Signature _Pan_    Ext 64636    Date 2/6/09
Title HR GENERALIST
Comments CT & FEDERAL FMLA runs concurrently

**ppdev** Policies, Procedures, Forms, Guides, & Quick Steps
# Yale University Forms

## Form 3501 FR.50
## Application for Leave of Absence
Revision Date: 03/10/09

☑ Initial Application          ☐ Application for Extension

Employee: _Curtis Reddick_   Title: _____   Phone #: _676-7962_

Supervisor: _Markgus mcGraw_ Title: _____   Phone #: _432-4864_

### Employee's Request
Dates
_11-10-09_ to _5/10/10_

**A.** ☑ Disability:
     ☑ Non-job connected illness or injury  ☐ Pregnancy (due date: _____ )
     ☑ Intermittent   ☐ Reduced Schedule

**B.** ☐ Child Rearing:
     ☐ Maternity   ☐ Paternity   ☐ Adoption   (due date: _____ )   _____ to _____

**C.** ☐ Caregiver
     ☐ Parent   ☐ Spouse   _____ to _____
     ☐ Child   ☐ Partner in a Civil Union
     ☐ Intermittent   ☐ Reduced Schedule

**D.** ☐ Military   _____ to _____
     ☐ Caregiver   ☐ Qualifying Exigency

**E.** ☐ Other / Personal (good cause)   _____ to _____

**F.** ☐ Workers Compensation (To be designated by HR only)   _____ to _____

Explanation: _____

---

**All supporting documents required by the University must be attached (see instructions)**
I understand the conditions under which a leave of absence may be granted and I affirm that the above statements and those contained in the supporting documents are true to the best of my knowledge. I also understand that I may not accept work from another employer during the period covered, without the express approval of the University.

Signature _Curtis Reddick_ _____ (Employee)   Date _11-10-09_

---

### Client Support
### Department of Human Resources Disposition
I have reviewed the request and the request shall be ☒ granted ☐ denied.
This leave of absence will be designated as : ☐ FMLA ☒ Federal and State FMLA ☐ Yale leave
His/her job will be held until _5/10/10_ , ☐ will not be held. The employee ☐ should ☒ should not be granted
University approval to accept work from another employer during the covered period.

Signature _Stephanie Danieu_   Ext _0-8389_   Date _12/7/09_

Title _LOA Coordinator_

Comments _9 days (72 hours) of FMLA used on previous leave. 568 hours remaining for this leave._

**ppdev** Policies. Procedures. Forms. Guides. & Quick Steps

# Yale University Forms

## Form 3501 FR.50
## Application for Leave of Absence
Revision Date: 03/10/09

[X] Initial Application          [ ] Application for Extension

Employee: Curtis Reddick          Title: Senior Custodian          Phone #: _____
Supervisor: Roger Watson          Title: _____          Phone #: _____

**Employee's Request**

Dates  1/21/10  to  2/18/10

A. [X] **Disability:**
    [X] Non-job connected illness or injury  [ ] Pregnancy  (due date: _____)
    [ ] Intermittent  [ ] Reduced Schedule

B. [ ] **Child Rearing:**                                    _____ to _____
    [ ] Maternity  [ ] Paternity  [ ] Adoption  (due date: _____)

C. [ ] **Caregiver**                                         _____ to _____
    [ ] Parent       [ ] Spouse
    [ ] Child        [ ] Partner in a Civil Union
    [ ] Intermittent [ ] Reduced Schedule

D. [ ] **Military**                                          _____ to _____
    [ ] Caregiver  [ ] Qualifying Exigency

E. [ ] **Other / Personal (good cause)**                     _____ to _____

F. [ ] **Workers Compensation (To be designated by HR only)** _____ to _____

Explanation: _____

All supporting documents required by the University must be attached (see instructions)
I understand the conditions under which a leave of absence may be granted and I affirm that the above statements and those contained in the supporting documents are true to the best of my knowledge.  I also understand that I may not accept work from another employer during the period covered, without the express approval of the University.

Signature _____ (Employee)          Date _____

**Client Support**
**Department of Human Resources Disposition**
I have reviewed the request and the request shall be [X] granted  [ ] denied.
This leave of absence will be designated as : [ ] FMLA  [X] Federal and State FMLA  [X] Yale leave
His/her job will be held until  2/18/10 , [ ] will not be held. The employee [ ] should [X] should not be granted
University approval to accept work from another employer during the covered period.
Signature  Stephanie Osanu          Ext  0-8389          Date  1/28/10
Title  Loa Coordinator
Comments  4 weeks of FMLA.

**ppdev** Policies, Procedures, Forms, Guides, & Quick Steps
# Yale University Forms

## Form 3501 FR.50
## Application for Leave of Absence
Revision Date: 03/10/09

☐ Initial Application          ☐ Application for Extension

Employee: *Curtis Reddick*          Title: *Sr. Custodian*          Phone #: _____

Supervisor: *Rogir Watson*          Title: *Supervisor*          Phone #: *436-4919*

### Employee's Request
Dates
*3/21/10* to *9/21/10*

A. ☒ **Disability:**
  ☒ Non-job connected illness or injury   ☐ Pregnancy (due date: _____ )
  ☒ Intermittent     ☐ Reduced Schedule

B. ☐ **Child Rearing:**                                                  _____ to _____
  ☐ Maternity      ☐ Paternity      ☐ Adoption    (due date: _____ )
  _____ to _____

C. ☐ **Caregiver**                                                    _____ to _____
  ☐ Parent       ☐ Spouse
  ☐ Child        ☐ Partner in a Civil Union
  ☐ Intermittent     ☐ Reduced Schedule

D. ☐ **Military**                                                     _____ to _____
  ☐ Caregiver     ☐ Qualifying Exigency

E. ☐ **Other / Personal (good cause)**                                 _____ to _____

F. ☐ **Workers Compensation (To be designated by HR only)**            _____ to _____

Explanation: _____

---

All supporting documents required by the University must be attached (see instructions)
I understand the conditions under which a leave of absence may be granted and I affirm that the above statements and those contained in the supporting documents are true to the best of my knowledge. I also understand that I may not accept work from another employer during the period covered, without the express approval of the University.

Signature _____ (Employee)          Date _____

---

### Client Support
### Department of Human Resources Disposition
I have reviewed the request and the request shall be ☒ granted  ☐ denied.
This leave of absence will be designated as : ☐ FMLA  ☒ Federal and State FMLA  ☐ Yale leave
His/her job will be held until *9/21/10* , ☐ will not be held. The employee ☐ should  ☒ should not be granted
University approval to accept work from another employer during the covered period.
Signature *Antwinne O. Sanchez*          Ext *6-8389*          Date *4/8/10*
Title *COA Coordinator*
Comments *There are 296.0 FMLA hours remaining to use for this leave.*

**ppdev** Policies, Procedures, Forms, Guides, & Quick Steps
# Yale University Forms

## Form 3501 FR.50
## Application for Leave of Absence
Revision Date: 03/10/09

☐ Initial Application      ☐ Application for Extension      *(203) 535-1607*

Employee: *Curtis Reddick*   Title: *Custodian*   Phone #: *432-4864*

Supervisor: *Markquis McGrath*   Title: *Supervisor*   Phone #: *432-4864*

### Employee's Request                                                    Dates

**A.** ☐ **Disability:**                                          _____ to _____
    ☐ Non-job connected illness or injury  ☐ Pregnancy (due date: _____)
    ☐ Intermittent  ☐ Reduced Schedule

**B.** ☐ **Child Rearing:**                                      _____ to _____
    ☐ Maternity  ☐ Paternity  ☐ Adoption  (due date: _____)

**C.** ☑ **Caregiver**                                           *9/24/10* to *11/5/10*
    ☐ Parent  ☑ Spouse
    ☐ Child  ☐ Partner in a Civil Union
    ☑ Intermittent  ☐ Reduced Schedule

**D.** ☐ **Military**                                            _____ to _____
    ☐ Caregiver  ☐ Qualifying Exigency

**E.** ☐ **Other / Personal (good cause)**                      _____ to _____

**F.** ☐ **Workers Compensation (To be designated by HR only)**  _____ to _____

Explanation: _____

---

**All supporting documents required by the University must be attached (see instructions)**
I understand the conditions under which a leave of absence may be granted and I affirm that the above statements and those contained in the supporting documents are true to the best of my knowledge.  I also understand that I may not accept work from another employer during the period covered, without the express approval of the University.

Signature *Curtis Reddick* (Employee)      Date *10-3-10*

---

**Client Support**
**Department of Human Resources Disposition**
I have reviewed the request and the request shall be ☑ granted ☐ denied.
This leave of absence will be designated as : ☐ FMLA  ☑ Federal and State FMLA  ☐ Yale leave
His/her job will be held until *11/5/10*, ☐ will not be held. The employee ☐ should ☑ should not be granted
University approval to accept work from another employer during the covered period.

Signature *Stephanie Rankin*      Ext *6-8589*      Date *10/8/10*

Title *Loa coordinator*

Comments *280.0 hours of FMLA remaining for this leave.*

**Policies, Procedures, Forms, Guides, & Quick Steps**
# Yale University Forms

*RECEIVED*
*APR 26 2011*
*WELCOME CENTER*

## Form 3501 FR.50
## Application for Leave of Absence
**Revision Date:** 11/18/09

☐ Initial Application      ☐ Application for Extension

Employee: _Curtis Reddick_  Title: _Custodian_  Phone #: _(203) 676-7962_
Supervisor: _Gary — mreville_ Title: _Supervisor_  Phone #: _(203) 432-4864_

### Employee's Request

Dates _4/26/11_ to _10/26/11_

**A.** ☒ **Disability:**
    ☒ Non-job connected illness or injury  ☐ Pregnancy (due date: _____)
    ☒ Intermittent   ☐ Reduced Schedule

**B.** ☐ **Child Rearing:**
    ☐ Maternity   ☐ Paternity   ☐ Adoption   (due date: _____)
_____ to _____

**C.** ☐ **Caregiver**
    ☐ Parent   ☐ Spouse
    ☐ Child   ☐ Partner in a Civil Union
    ☐ Intermittent   ☐ Reduced Schedule
_____ to _____

**D.** ☐ **Military**
    ☐ Caregiver   ☐ Qualifying Exigency
_____ to _____

**E.** ☐ **Other / Personal (good cause)**
_____ to _____

**F.** ☐ **Workers Compensation (To be designated by HR only)**
_____ to _____

**Explanation:** _____

---

### Paid Time Off Designation
For all leaves of absence (continuous and intermittent), employees **MUST** designate how they would like to be paid.
Employees can use any combination of available Sick, Vacation/PTO, Bonus Vacation, Personal, Floating Holiday, Compensatory Time or choose to be unpaid. (Note: For Personal Leaves, employees may not use Sick time) Please check your option below.
The Standard Designation is as follows:

☐ Sick, Vacation/PTO, Bonus Vacation, Personal, Floating Holiday, Compensatory Time, then Unpaid

**OR**   Please write a Paid Time Off designation below:

---

**All supporting documents required by the University must be attached (see instructions)**
I understand the conditions under which a leave of absence may be granted and I affirm that the above statements and those contained in the supporting documents are true to the best of my knowledge.  I also understand that I may not accept work from another employer during the period covered, without the express approval of the University.

Signature _____ (Employee)      Date _____

### Client Support
**Department of Human Resources Disposition**
I have reviewed the request and the request shall be ☒ granted ☐ denied.
This leave of absence will be designated as : ☐ FMLA ☒ Federal and State FMLA ☐ Yale leave
His/her job will be held until _10/26/11_ , ☐ will not be held. The employee ☐ should ☒ should not be granted
University approval to accept work from another employer during the covered period.
Signature _Stephanie Santi_   Ext _6-8389_    Date _4/28/11_
Title _LOA Coordinator_
Comments _____

# EXHIBIT B

**Custodial Services**

**Revised 6/9/2009**
**Custodial Team Leader**
**LG-10**

<u>**Duties and Responsibilities**</u>

The **Custodial Team Leader** takes ownership in the property, both interior and exterior, and is customer focused, dedicated to providing excellent service to faculty, students, and staff. Takes pride in meeting the ever changing needs of our customers to further the world class standing of Yale. Key to this position is that it provides leadership and motivation to a self directed custodial team in meeting the needs of the customer. This position is not based on seniority. The candidates will be selected by the interview process and successful completion of a training program. A minimum of three (3) business letters of reference must be submitted by the close of the bidding deadline.

1.   Directs and leads other employees in providing custodial services to include all cleaning activities, scheduling and assignment of staff, and training activities.

2.   Takes initiative and acts independently to insure the needs of the customer are met while working within guidelines established by their supervisor.

3.   Provides motivations and direction to custodial team members on a routine basis.

4.    Routinely interacts and communicates with customers and facilities operations personnel via E-Mail, verbally, and through the FAMIS Work order Management system   to coordinate and complete assigned work. Performs routine inspection of building property to insure that all areas are properly cleaned and well maintained and take action to correct.

5.   Partners with *Facilities Steward* in areas assigned.

6.   Divides time between leading team as well as performing all custodial cleaning  activities in areas to include but not limited to dormitories, offices, laboratories, libraries,  lobbies, stairways, window cleaning, exhaust vents, swimming pool areas, steam rooms, rowing tanks, athletic facilities, recycling and trash areas, locker rooms, bathrooms, elevators, equipment and storage rooms, museums and collection spaces.

7.   Leads team as well as performs services such as but not limited to closing windows, replacing light bulbs, repair and service of custodial equipment, empting both interior and exterior trash and recycling containers, cleaning and emptying cigarette urns, and moving furniture and equipment. Uses custodial tools and equipment as necessary to perform the work.

8.   Leads team as well as performs custodial services for University events such as but not limited to commencement, reunions, school opening and closing. Provides building services such as moving and setting up furniture, assists with events, and secures equipment and materials.

9. Leads team as well as performs regular building inspections and triages work to custodians and other facilities operation departments. Communicates directly with the customer service center to initiate work orders. Documents inspections and performs follow up to insure the work has been completed.

10. Leads team as well as responds to emergency custodial issues and coordinates staffing and supplies. Coordinates remediation with other departments and communicates status of work to the customers.

11. Assists other employees in empting exterior trash/recycling containers. Assists custodial staff in maintaining trash and recycling areas and trash containers.

12. Maintains clean work areas and/or cleans job site.

13. Provides custodial services in support of other trades

14. Directs and trains lower labor grade employees.

15. Observes as well as conveys and communicates to the team, safety standards and practices.

16. Performs related duties and guides team as required or assigned within job classification under the direction of the assigned team supervisor for the area.

## Job Requirements

Experience:    Six years experience in custodial service work. General knowledge and experience in property services to include grounds care and building repair services sufficient to effectively assess a situation and dispatch the required services to rectify a problem. In addition must have demonstrated leadership and communication skill.

Education:    High School Diploma or equivalent preferred.
Successfully Completed Yale sponsored Team Leadership training course

Other:    Excellent Customer Service skills
Must hold valid CT driver's license
Experience with computers to include MS software: Word 1 and Excel 1
Must have demonstrated Leadership & Motivational skills
Ability to act independently
Must have good communication skills (Verbal and written)
Must be proficient with E-Mail and FAMIS
Ability to lift 50 pounds, perform repetitive motion & walk up and down stairs

2

Revised: 4/3/2009 3:05 PM

MEMORANDUM OF AGREEMENT

Yale University and Local 35, in the spirit of progress and growth have mutually
recognized and agreed upon the need for *change*. Changes in means and methods used
for negotiation, staffing, work assignments, priority setting, etc., using a greater sense of
collaboration, communication, teamwork, empowerment and accountability will lead to
higher quality of service, increased employee productivity and a higher level of customer
satisfaction. These are believed to be the cornerstones of success for both the University
and Local 35 that will lead to competitiveness and growth ultimately benefitting the
greater community of Yale University.

## Custodial Team Performance and Leadership Program

**Whereas,** Yale University and Local 35 wish to work together to significantly increase
the quality of service, employee productivity, and customer satisfaction of custodial
services across the entire University, as well as to provide additional jobs and opportunity
for professional growth amongst the members of Local 35 custodial staff.

To this end, a new service model has jointly been developed and attached as Exhibit A
*Custodial Team Performance and Leadership Program*. This approach will be applied to
new academic and academic research buildings (such as FES, Social Science, and the
Yale Biology building)on a schedule jointly determined, based on continuing success of
the program and without abrogation of any current rights of the University as to
outsourcing. The University will also transition outsourced academic or academic
research facilities to the L35 staffed service model based on the success of this new
program as outlined in Exhibit A.

This memorandum of agreement will be effective upon the early extension of the 2002
Collective Bargaining Agreement and will be in effect for the full duration of such
extension.

Bob Proto
President,
Local 35 UNITE HERE

Mark Wilson
Vice President,
Local 35 UNITE HERE

Bruce Alexander
Vice President for New Haven & State
Affairs & Campus Development

Michael Peel
Vice President,
Human Resources

Dated: April 13, 2009

1

## Letter of Agreement
## April 13, 2009

The University and Local 35 agree that the base staffing level formula for adjustment of staffing levels in Physical Plant as described in Section 22.1 (D) of the 2002 Agreement, needs to be revised to reflect current conditions or to be eliminated entirely.  To that end, we will form a task force to formulate and execute a plan to revise it.  The members of the task force will be designated by the Vice President for New Haven & State Affairs & Campus Development and the President of Local 35.

_____
Bob Proto
President,
Local 35 UNITE HERE

_____
Bruce Alexander
Vice President for New Haven State
Affairs & Campus Development

Revised: 4/3/2009 3:05 PM

## Exhibit A:

## Custodial Team Performance and Leadership Program

### Overview:

The Custodial Team Performance and Leadership Program is a new business model for providing custodial services to University buildings that is intended to yield higher levels of customer satisfaction, quality of service and productivity than are yielded from the department's current service. The program consists of a staffing model with new and altered job descriptions. The program requires increased responsibility and accountability of Local 35 staff, particularly of "lead-persons": Facilities Stewards and Custodial Team Leaders. The success of the program is dependent on the performance of these key personnel. These lead-people must be able to: Provide leadership and direction to other Local 35 staff while not having administrative disciplinary authority over this staff; Perform frequent informal direct communication with customers and periodic formal communication with customer interaction via "facilities status-meetings".

### Organizational Structure

The *Custodial Team Leader* is a newly established custodial position with the additional responsibility to lead and direct the custodial staff in an assigned geographic area. The incumbent in this position will divide time between normal custodial work assignments and administrative/leadership responsibilities (up to 50% administrative/leadership). The incumbent will be in routine contact with the area occupants and/or business leaders and be empowered to act on the request of the same. While there will continue to be a management supervisory position, it is envisioned that the supervisor will largely be

Revised: 4/3/2009 3:05 PM

responsible for providing support to the team by providing the tools and training while at the same time removing the impediments to the teams development.

This *Custodial Team Leader* will be paired with a **Facilities Steward** and while the Facilities Steward will largely focus on building stewardship (i.e. maintenance), the Facilities Steward will also partner as a peer with the Custodial Team Leader in all matters relating to the upkeep of the areas assigned (organization chart attached). The custodial team leader and custodians assigned to the same area will administratively report to a common supervisor. However, the *Custodians* will functionally take direction from the team leader on a day to day basis. In the event the Custodial Team Leader is absent from his or her assigned position, the supervisor shall be responsible for all administrative functions of this position.

The new job description for Custodial Team Leader will replace the existing *Senior Custodian* job description in selected buildings/areas. Existing Senior and Light Custodians will be grandfathered in these existing positions but will not be replaced when they vacate these positions. However, in consideration that the Light Custodian position might be needed for employees with temporary physician documented restrictions, light duty will be offered to these individuals using these positions not to exceed one year.

**Implementation Approach**

**Training:**

Training modules will be developed for Custodial Team Leaders candidates to enhance demonstrated aptitude. The training program will consist of three elements with required training modules in each area. The following elements as agreed are:

1. Leadership
   - Coaching

Revised: 4/3/2009 3:05 PM

- Team building – Leadership without direct administrative disciplinary authority.
- Motivation

2. Communication
   - Written Communications (Business Writing)
   - Verbal Communications (Presentation skills, Conducting meetings, Customer communications)

3. Computer skills (Electronic Communications)
   - E-mail
   - Microsoft Word
   - FAMIS (Service Request Management)

This program will be administered through Organizational Development/Human Resources and will require approximately eighty (80) hours of training including demonstrated proficiency.

Initial training (during program *Phase In*) will be offered to selected candidates (see section on *Selection*).

Training is to be completed prior to assignment to lead position. In addition, training will be offered on an ongoing basis to both lead candidates as well as custodial or other Local 35 staff interested in professional development. Completion of training however does not necessarily qualify an employee as a lead. This will remain a joint evaluation between Local 35 and the University.

**Initial Pilot Areas**

In preparation for the deployment of the *Custodial Team Performance and Leadership Program* model to new and existing academic and academic research buildings, the Local

4

Revised: 4/3/2009 3:05 PM

35 self directed custodial team model with team leader will be piloted beginning on or about September 1, 2009.  Candidates for piloting the program are identified as follows:

- School of Management (SOM)
- One Unit in the Med School - TBD
- Yale Law School
- Yale School of Music
- FES (KROON Hall)
- Saybrook College
- Davenport College
- Pierson College
- Calhoun College
- Yale Divinity School
- Yale West Campus buildings that are occupied by Yale University employees

### Monitoring Program Results

The initial pilot process and the program will be monitored through joint Local 35 and University participation to insure levels of productivity, quality of service and customer satisfaction are consistent with industry leaders.  Productivity will be measured on the basis of the number of labor hours it takes to do the job.  Routine inspections by mutually agreed to third-party inspectors will be used to measure the quality of service.  Client surveys (recommend quarterly) will be conducted to measure customer satisfaction.  This information will be evaluated jointly by the University and Local 35.  Performance levels that meet mutually agreed upon industry benchmarks must be sustainable at this level for the pilot program to be deemed a success.

### Intended Roll Out

Revised: 4/3/2009 3:05 PM

It is intended to initiate the training aspect of this program by 7/1/09. Selected leader candidates will be processed through the training modules and upon successful completion will be assigned to a team.

The pilot program will commence as soon as practical following successful completion of employee training. This will likely occur on or about 9/1/09.

**Additional Buildings**

The University agrees to transition currently-outsourced academic or academic research facilities and new academic or academic research facilities (e.g., new SOM and residential colleges) as they come on line to the Local 35 staffed service model based on the success of this new program. Program success will be measured as described above in Monitoring Program Results. Local 35 and the University will each independently and in its own sole and absolute discretion determine when program success has been achieved. When both parties conclude that program success has been achieved, the University will select and transition additional facilities as described above on a mutually agreed upon schedule.

If the University subsequently determines that the program is no longer successful, the transition of additional facilities will be suspended until the program is again determined to be successful by both parties pursuant to the criteria in Monitoring Program Results. If after eighteen (18) months of operations of the new service model the University determines that a particular building transitioned to the Local 35 staffed service model is no longer successful, it may discontinue the Local 35 Staffed Service Model in that location and outsource that building.

The University will maintain some of its facilities, including academic and academic research buildings, through outsourced custodial services (including for purposes of benchmarking). Nothing in this program or agreement abrogates or modifies the University's right to outsource.

6

Revised: 4/3/2009 3:05 PM

**Employee Selection**

The main objective of the selection process is to find the best overall qualified employees with a strong desire and ability for providing outstanding customer service. While desire and ability are essential, additional competences and requirements are necessary to insure success. Candidates for consideration will be chosen based on their interview, employment history, past performance, leadership skills, communication skills (both verbal and written), and electronic communication skills.

For buildings/areas currently serviced by custodial contractors the University has the option to hire the existing custodial staff prior to a posting.

Employees in the Local 35 bargaining unit will be eligible to bid on the new positions but University seniority will not be the sole determining factor in the selection process. Since it is a joint effort to find the overall best qualified employees, external candidates will be considered in the selection process. External candidates in the selection process will be considered subject to the mutual agreement of both Local 35 and management.

The University will solicit input and discuss with the Union its selection of supervisors. Supervisors will participate in training along with the employees.

**Initial Phase in**

A selection committee comprised of union and University leadership will interview candidates for the selected positions and make their final recommendation. Selection of personnel is divided between two areas: *Phase In* and *Steady State.*

Revised: 4/3/2009 3:05 PM

*Phase In:*

To phase the program in, selection of the initial candidates will proceed as follows:

1. After the number of Custodial Lead positions is identified (no fewer than six in the first twelve month period) and the positions are posted, a meeting inviting all interested L35 employees will be held. At this meeting, the program and the process for training and selection will be presented. It is anticipated that this informational session will develop a group of interested participants.

2. Interested participants will be interviewed by a team made up of both University and union representatives. This committee will recommend the initial individuals who will be considered for filling the open positions.

3. Selected candidates will then be scheduled for training consistent with the program discussed above. Upon successful completion of the required training candidates will be placed in the positions identified on a trial period or probationary basis (as described under *"Steady State"* below).

*Steady State:*

Once the program is established, ongoing (steady state) selection of Custodial team Leaders will follow a slightly different process. When a position becomes available candidates will be selected as follows:

8

Revised: 4/3/2009 3:05 PM

1. Candidates must have completed the required training prior to being considered for the position. External candidates can demonstrate through past training or job experience that they possess the equivalent to the required prior training.

2. As part of the selection process candidates will also be interviewed jointly by both management and union representation (i.e. hiring supervisor & Union Steward). In addition, candidates will be required to submit a minimum of three professional references.

3. The interview results and references as well as a candidate's work history, performance and observations will be provided to the Selection Committee. This ad hoc committee is made up of a minimum of four (4) members as follows:

   a. One (1) Custodial Supervisor
   b. One (1) Custodial Team Leaders (i.e. peer)
   c. One (1) Facilities or Custodial Manager
   d. One (1) union steward.

Other parties such as end users or HR may be invited to attend meetings.

The committee will review and evaluate the information provided and either select or deny the applicant based on qualifications.

Selected employees during phase in and steady state will be provided an on site orientation and meeting with building customers. All selected employees will be subject to the probationary or trial period for up to 90 calendar days. The probationary or trial period may be extended for up to an additional 60 calendar days as determined by the University.

The selection committee will monitor the job performance for each selected employee and make a recommendation to extend or terminate the probationary or trial period.

Revised: 4/3/2009 3:05 PM

The final decision to extend or fail a probationary employee shall remain the decision of the University.  The final decision to extend or fail a bargaining unit employee on a trial period shall remain the decision of the University. In the event a bargaining unit employee fails the trial period they will exercise their rights under the contract.

# Custodial Team Organization



Team Supervisor

Facilities Steward
(Building/Facilities Maintenance)

Custodial Team Leader
(Building/Facilities Custodial Services)

Custodian

Custodian

Custodian

Custodian

Custodian

Custodian

Assigned Area

# EXHIBIT C

# Yale University

Office of Facilities
Business Office
P.O. Box 208297
New Haven, Connecticut 06520-8297

Campus address:
2 Whitney Avenue
Second Floor

September 27, 2010

Curtis Reddick
31 Victoria Court
Hamden, CT   06514

Dear Curtis:

Thank you for your interest in pursuing the Custodial Team Leader position in the Office of Facilities. Just being selected from the large group of applicants to interview was quite an accomplishment. Unfortunately, you were not chosen for the training program. The selection of candidates was based on a combination of the overall interview process and the reference letters provided. We are hopeful that there will be other opportunities for you at the University.

It was our absolute pleasure to have had the opportunity to meet with you and to get to know you better.  Thank you for applying to this program.

Sincerely,

Bob Young, Director, Central Facility Services

Brian Wingate, Yale University, Best Practices

Meg Riccio, Local 35, Yale University Best Practices

Steve Percival, Director, YSM Facility Services

# EXHIBIT D

Req detail    Req history    Forms

**Job posting preview eLink history**

| Sender name | Recipient name/email | eLink sent | eLink opened |
|---|---|---|---|
| Tavella, Kara(kara.tavella) | Bollier, John | 26-May-2011 | |
| Alves, Julia(julia.alves) | Tavella, Kara(kara.tavella) | 26-May-2011 | |
| Bollier, John | Alexander, Bruce(bruce.alexander) | 31-May-2011 | |

**Req details Senior Custodian**                                        **Req status Closed**

| | |
|---|---|
| **Job Code** | 854 Senior Custodian (06) |
| **University Generic Title** | Senior Custodian |
| **Position General Purpose/Overview of Responsibilities:** | **MOBILE ROUNDS** Support management by directing the effort of the custodial staff who provide cleaning service to all areas of the University such as suites, offices, classrooms, kitchens, living spaces, dormitory rooms, laboratories, lobbies, locker rooms, stairways, corridors and elevators. |
| **Department** | Cust Svs |
| **STARS Requisition number** | 13280BR |
| **Recruiter** | Brooks, Teretha(teretha.brooks) |
| **Supervisor** | McGraw, Marquis(marquis.mcgraw) |
| **Location/Division** | Office Of Facilities |
| **No. of Identical Positions to be Posted** | 1 |
| **Positions Remaining** | 0 |
| **FLSA Status** | Non-Exempt |

**Position Requirements (Local 35 Facilities Req) - The following fields will appear on the job posting.**

| | |
|---|---|
| **Essential Duties** | 1. Direct lower labor grade employees assigned in the following manner:<br>a.Direct the implementation of work schedules made out by the supervisor.<br>b.Change schedules in accordance with the supervisor's instructions to ensure best coverage for absenteeism or sickness.<br>c.Change schedules in emergencies to accomplish assigned tasks when supervisor is not available.<br>d.Ensure that the proper supply of equipment and materials are on hand and being used in accordance with standard practices.<br>2. Clean and dust suites, offices, classrooms, kitchens, living spaces, dormitory rooms, laboratories, lobbies, locker rooms, stairways, corridors, elevators, etc.<br>3. Make beds as required.<br>4. Dust mops and wet mops floors.<br>5. Clean and polish furniture and clean windows. |

6. Spray buff, spot seals, strip seal and wax floors as instructed, using appropriate equipment.
7. Clean and maintain restrooms and bathrooms.
8. Clean glass, chalkboards, display cases, interior partitions, light fixtures, etc.
9. Refill toilet paper, paper towel, sanitary napkin and soap dispensers.
10. Clean swimming pools, steam rooms, rowing tanks, running tracks, and related gym installations not requiring the use of building trades tools.
11. Clean and polish hardware such as door handles, push plates, kick plates, metal handrails, cigarette urns, drinking fountains, and restroom trim (external piping, faucets, traps, and valves).
12. Vacuum, spot clean and shampoo carpets.
13. Remove and clean floor mats and entrance rug runners.
14. Close, open, lock and unlock windows and doors.
15. Replace burned out light bulbs or report same to supervisor.
16. Wash walls, doors and woodwork.
17. Move furniture and equipment as required.
18. Maintain service rooms and storage areas in a clean and orderly manner.
19. Maintain adequate supply of cleaning equipment, materials, and supplies.
20. Use cleaning tools such as mops, brooms, squeegees, cleaning cloths, sponges, pails, brushes, vacuum cleaners, and floor machine.
21. Turn in found articles in accordance with University policy.
22. Remove snow, ice and litter from building entrances or sweeps same.
23. Remove trash and trash containers from buildings to designated disposal areas and clean area after trash has been picked up.
24. Report all repairs required and safety and fire hazards to supervisor.
25. Train lower labor grade employees using various training methods.
26. Observe safety standards and practices.
27. Perform related duties as required or assigned within job classification.

**Education and Experience**   1. Five or more years in cleaning services or related type work.

**Additional Education and Experience**

**Skills & Abilities**   1. Ability to read, write, follow written instructions and communicate written and verbal instructions to other employees.

**For Standard Work Schedules, complete Type of Employment and Work Week fields only. For Flexible or Nonstandard schedules, complete Type of Employment, Work Week, Work Days (Other than Standard), and Work Hours (Other than Standard) fields.**

**Type of Employment**   Full Time

**If Part-Time, total # of hours to be worked**

**Work Week**   Non Standard Work Week

**Work Days (Other than Standard)**   Monday
Tuesday
Wednesday
Thursday

|  | Friday |
| **Work Hours (Other than Standard)** | Monday - Friday 4:00pm - 12:00am |
| **Full Time Equivalent** | 40.0 hours (Local 35 or requires HR approval) |
| **Weekend Hours Required?** | No |
| **Evening Hours Required?** | Yes |
| **Shift Differential/Premium Info:** | |
| **Is this position eligible for shift differential or trade premium?** | Yes |
| **If yes, please indicate type:** | |
| **If shift/premium differential applies, what is the value?** | 1.05 |
| **If shift/premium differential applies, what is the percentage?** | |
| **If shift/premium differential applies, include in base hourly rate?** | Yes |
| **Additional Position Information:** | |
| **Budget Type** | Budgeted Replacement |
| **If Replacement Position, Incumbent Name (Last Name, First Name)** | Wilson, Mark |
| **Incumbent Job Title** | |
| **Incumbent Job Grade** | |
| **Job Category** | Service & Maintenance |
| **Bargaining Unit** | L35 |
| **Salary Grade** | 06 |
| **Searchable Job Family** | Custodial Services |
| **Reporting Job Family** | Custodial Services |
| **Work Location** | Central Campus |
| **Worksite Address** | Mobile Rounds |
| **Worksite Phone Number** | 6-5737 |
| **Is this a rounds position?** | Yes |
| **If yes, where?** | |
| **University Mail Code** | 520-Custodial Services |
| **Home Organization Number** | FACCS Central Budget Account 922019 |
| **Additional Position Requirements:** | |
| **Physical Requirements/Licenses/Certifications** | 1. Ability to climb and descend stairs.<br>2. Ability to stoop, bend and/or squat.<br>3. Ability to climb a ladder as dictated by their regular job requirements.<br>4. Work in confined areas.<br>5. Move and carry furniture, equipment trash and other materials of the trade weighing up to 50 pounds without |

assistance and within the normal capacity of their job.
6. Remove snow, ice and litter from building entrances.
7. Ability to move wet/dry vacuums and floor scrubbing machines weighing up to 85-150 pounds without assistance and while utilizing their built in wheels.
8. Heavy Lifting.
9. Heavy Floor Work.

**Please select the tests required for this position**

**Background Check Eligiblity**  External and Internal

**Background Check Requirements**  All external candidates for employment will be subject to pre-employment background screening for this position, which may include motor vehicle and credit checks based on the position description and job requirements. Internal candidates may be subject to a motor vehicle or credit check for this position based on the position description and job requirements. All offers are contingent on successful completion of the required background check. Please visit www.yale.edu/hronline/careers/screening/faqs.html for additional information on the background check requirements and process.

**\*Note: If this position requires a credit or MVR check please select the appropriate package below. If credit and MVR are not required, please select the Standard package.**

**Background Check Package**  Standard

**Drug Screen**  No

**Health Screening**  No

**Test Details**

**Labor Schedule Information:**

**Initial Labor Schedule**  HR Transaction Center to enter according to PTAEO(s) provided below

**PTAEO #1**

**Project 1**  00

**Task 1**  1022887

**Expenditure 1**  723100

**Award 1**  0001DC

**Org 1**  922019

**Percentage 1 (###.###)**  100

**PTAEO #2**

**Project 2**

**Task 2**

**Award 2**

**Expenditure 2**

**Org 2**

**PTAEO #3**

**Project 3**

Percentage 2 (###.###)

Task 3

Award 3

Expenditure 3

Org 3

Percentage 3 (###.###)

**PTAEO #4**

Project 4

Task 4

Award 4

Org 4

Expenditure 4

Percentage 4 (###.###)

**Business Office Information:**

**Business Manager** Click here to request a name be added to the list    Kara(kara.tavella) Tavella

**Primary Departmental Requisition Contact** Click here to request a name be added to the list    Marquis(marquis.mcgraw) McGraw

**Primary Departmental Contact Phone Number**    6-5737

**Name of Preparer**    Julia Alves

**Advertising**

**Will this position be advertised?**    N/A

**If yes, when should the advertisement be placed?**

**If choice is Other, please specify when**

**If yes, where should position be advertised?**

**If yes, Advertising PTAEO**

**Advertising Text**

**Where was the advertisement actually placed?**

**What was the final, actual advertising cost?**

**If advertised in more than one location, enter the total cost breakdown here:**

**HR Use Only**

**Last Day Bids Accepted**    13-Jun-2011

**Original Posting Date**    01-Jun-2011

| | |
|---|---|
| **External Gateway Posting Date:** | |
| **Yale Posting Status** | CLOSED TO FURTHER APPLICATIONS |
| **Yale Posting Status Updated** | |
| **If position cancelled, state reason:** | |
| **If Cancel & Repost, enter reposted req # here:** | |
| **Candidate Development Specialist (CDS) Assigned** | |
| **CDS Assigned Date** | |
| **Hire Status** | |
| **Hire Type** | |
| **Hire Source** | |
| **Approved By** | |
| **Verified Date** | |
| **HRG Comments** | |
| **Recruiter Comments** | |

**ADDITIONAL INSTRUCTIONS FOR COMPLETING THE REQUISITION:**

Req Team: Leave those names that autopopulate and add those who have a business need to see the activity and candidates associated with this requisition.

Turn Off Autofiler Notification: Please verify that this box is checked.

Approval Routing: Based on your department's business rules, enter only those individuals who need to approve the posting of this requisition. Bypass those approval levels that are not applicable.

Approvals will route sequentially; therefore, if one individual is an approver at multiple levels, enter only the highest level and bypass the others to avoid multiple requests for approval to the same person.

Notify Upon Approval: Verify that HR, Recruiter Staffing is selected.

| Req team | Name | Dept. | Job title | Phone | Fax |
|---|---|---|---|---|---|
| | Lynch, April (april.lynch) | HRSTAF Staffing Org 97410 | Personnel Assistant | 203-432-1121 | |
| | Tavella, Kara (kara.tavella) | FACBO Business Office 971 | Associate Director 3 | 203-432-6815 | |
| | Young, Robert | FACDDF Deputy Director - | Director 3 | 432-0142 | |
| | Brooks, Teretha (teretha.brooks) | HRSTAF Staffing Org 97410 | Coordinator 3 | 203-432-2092 | |
| | Vendola, Susan (susan.vendola) | MFDO Finance & Administra | Technical Assistant 4 | 203-785-7419 | |

| | | | |
|---|---|---|---|
| HR, Client Support | | | |
| HR, Recruiter Staffing | Staffing | | 432-5700 |
| Dantone, Carrie (carrie.dantone) | HRSTAF Staffing Org 97410 | Senior Administrative Assistant | 203-436-3900 |
| Yaeger, Katherine (katherine.yaeger) | HRER Employee Relations 9 | Human Resources Representative 2 | 203-436-5714 |

**Turn-off Autofiler notification for this req**    ✓

## Approval Routing

**Approval routing**

| Job title | User | Date |
|---|---|---|
| Hiring Manager | Tavella, Kara (kara.tavella) | 26-May-2011 |
| Org Unit Business Manager | Bypass | 26-May-2011 |
| Department Business Manager/Head | Bollier, John | 31-May-2011 |
| Associate University Librarian | Bypass | 26-May-2011 |
| Comp and Class | Bypass | 26-May-2011 |
| Officer/Provost (BOLT/Designee) | Alexander, Bruce (bruce.alexander) | 01-Jun-2011 |

**Notify upon approval completion**    HR, Recruiter Staffing

**To be completed after the req has been filled.**

**Name of Person Hired**

**Start Date**

**Added by**    Alves, Julia(julia.alves)

**Added on**    26-May-2011



# EXHIBIT E

New Shift



# Law School - Custodial Services

**Curtis Reddick** – Ruttenberg Wing  Spilt Shift  4 AM – 12 Noon

<u>Daily:</u>

Maintain 1st floor and Basement including Dean Row

2 Bathrooms

Mop and spot mop as needed

Remove Trash: M/W/F

Sweep and Mop Stairs from MZ to the Basement

---

<u>Front Suites:</u> Trash – M/W/F/    Detail Suites: – Tuesday/Thursday

<u>Grove/High:</u>

Sweep, Mop – Corridors/Stairs

<u>Ruttenberg Wing:</u>

Tuesday/Thursday – Trash, Recycling, Boxes

Monitor and Police Grove Street /2M Bathrooms

Pull Trash/Refresh all Class rooms and Seminar Rooms – As needed - (Vacuum when necessary)

Pull Trash by Dining Hall

---