STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES
West Central Regional Office
55 West Main Street, Suite 210, Waterbury, CT 06702

AFFIDAVIT OF ILLEGAL DISCRIMINATORY PRACTICE

CASE No. 1230052                                    DATE: August 10, 2011
EEOC No. _____

My name is Curtis Reddick

My mailing address is: 31 Victoria Court, Hamden, CT 06514

The respondents are Yale University, Unite Here – Local Union 35 and Meg Riccio.

Whose business address is: Yale University: 2 Whitney Av3nue, 6th Floor, New Haven, CT 06510

Unite Here, Local Union 35: 425 College Street, New Haven, CT 06511.

I was:

☒ discriminated against in terms and conditions of employment  Continual to 8/10/11
☐ terminated on or about _____         ☒ not hired/ promoted on or about: 9/27/10 – Present
☐ suspended on or about _____          ☐ not rented a dwelling on or about _____
☐ placed on probation on or about _____   ☒ harassed ☐ sexually - continual through 8/10/11
☐ demoted on or about _____            ☐ earning a different rate of pay on or about _____
☐ warned on or about _____             ☐ constructively discharged on or about _____
☐ given a poor evaluation on or about _____   ☒ retaliated against continual through 8/10/11
☐ denied a raise on or about _____     ☐ not hired due to a BFOQ on or about _____
☐ less trained on or about _____       ☐ not hired due to a disability on or about _____
☐ denied an office on or about _____   ☐ delegated difficult assignments on or about _____
☐ denied service (s) on or about _____ ☐ other _____

I believe that my:

☐ race                ☐ national origin    ☐ ancestry           ☐ color
☐ age _____         ☐ alienage           ☐ religion           ☐ creed
☐ marital status      ☐ familial status    ☐ sex  ☐ male  ☐ female
☐ sexual orientation  ☒ physical disability ☐ pregnancy
☐ mental disability/disorder   ☐ learning disability   ☐ prior criminal record
☐ lawful source of income      ☒ previously opposed discriminatory conduct

## AFFIDAVIT OF CURTIS REDDICK V. YALE UNIVERSITY, UNITE HERE, LOCAL UNION 35 and MEG RICCIO

1. I am over the age of 18 and believe in the obligations of an oath.

2. The facts stated herein are true and correct to the best of my knowledge and belief.

3. I am a 48 year old African American male born on January 27, 1963.

4. I reside at 31 Victoria Court, Hamden, CT 06514.

5. Yale University (hereinafter "Respondent") has its legal offices located at 2 Whitney Avenue, 6th Floor, New Haven, Connecticut 06510 and employs more than fifteen (15) employees.

6. I name Meg Riccio (hereinafter "Respondent Riccio") as an additional Respondent who was employed by Respondent's Unite Here, Local Union 35 (hereinafter "Respondent Union") located at 425 College Street, New Haven, CT 06511.

7. I was hired by the Respondent approximately Twenty-One (21) years ago and consistently performing my position in an above average and satisfactory manner.

8. I am a disabled individual that suffers from a chronic condition that causes me to have severe spasms that compromise my circulatory system.

9. I also suffer from chronic sleep apnea.

10. Beginning in 2008, my medical condition caused me to suffer episodic flare-ups and necessitated that I apply for intermittent family medical leave time which was granted.

11. I have consistently since 2008 applied for, and continue to be covered under, intermittent family medical leave until present date.

RECEIVED
STATE OF CONNECTICUT

AUG 11 2011

Comm. On Human Rights & Opportunities
WEST CENTRAL REGION

12. Respondent, at all times was fully knowledgeable and aware of my chronic health conditions.

13. Following the onset of my medical conditions, I began to be subjected to severe harassment and discrimination by the Respondent.

14. Union Respondent intervened and notified Associate Dean, Mark Templeton of the hostile environment that I was being subjected to and requested a resolution.

15. I continued to face harassment and discrimination due to my disabilities and my need to utilize family medical leave time when my medical condition would flare-up.

16. In October, of 2009, I was falsely accused by my supervisor, McGraw of not having performed my job wherein McGraw stated that I had inadequately cleaned the bathrooms in my assigned area.

17. I was not the individual responsible for those unperformed tasks as they were a direct assignment to be performed by the night shift.

18. I reported the harassment and discrimination to the Dean of the Yale University Law School.

19. When management became aware that I had made a report with the Dean, I was reprimanded by McGraw for "not following the chain of command."

20. I was further advised that there would be "consequences to pay" for my actions.

21. The harassment, discrimination and retaliation against me intensified.

22. McGraw began to reprimand and counsel me in regarding to my attendance even though I was covered under approved family medical leave.

23. During a meeting with McGraw he openly discussed my private and confidential health information in front of other employees.

24. I was provided with written warnings for my attendance by McGraw, even though McGraw was well aware that my absences were excused and covered under family medical leave.

25. I was then contacted by Respondent's Human Resource Department and falsely notified that I no longer had any family medical leave time available to me.

26. On November 24, 2009, I submitted a formal complaint letter to the Respondent outlining the harassment, discrimination and retaliation I was being subjected to.

27. During the last week of October 2009, due to the stress on the job, I suffered another disability related flare-up and had to be transported from the job by ambulance to the emergency room.

28. I was advised by the Respondent that they wanted to reassign my duties that entailed only washing windows.

29. On December 10, 2009, the Respondent received a legal letter from legal counsel notifying Respondent that their actions were in violation of the Family Medical Leave Act and the American's With Disability Act.

30. For a few months following that letter I was pretty much left alone.

31. During this same time period, I was notified that I had been selected to partake in the Respondent's Team Leader Training Program and upon completion I would be placed into a Team Leader position.

32. This opportunity would increase my pay grade fom a Level 6 to a Level 10 resulting in almost a $10k per year increase in my salary.

33. All individuals selected for the program had to attend a week long class.

3

34. I completed the entire first week of the program and was then called back with my peers to provide feedback on how we liked the program.

35. During that last day of the program, I began to have problems breathing and sought medical attention.

36. I was out of the workplace for three days due to my medical complications.

37. When I returned back to the workplace, my peers who had attended the Team Leader Program were in the process of being placed into their promotional positions.

38. When I inquired if I was going to be placed into a promotional position, Brian Wingate and Bob Young advised me that I could not be promoted because I had missed the last day of the program.

39. I advised Brian and Bob that I did not feel it was fair to penalize me due to my disability.

40. I was then told that I would be set up for the final interview and not to worry, it would be straightened out.

41. On September 27, 2010, I received a written notification that I had not been selected for promotion and was denied the ability to complete the final interview.

42. I was the only employee who attended the Team Leader Program who was not promoted.

43. The September 27, 2010, letter was signed by Bob Young, Director of Facility Services, Brian Wingate, Yale University Best Practices, Meg Riccio, Local 25, Yale University Best Practices and Steve Percival, Director, YSM Facility Services.

4

44. I immediately contacted Respondent Riccio, who was my Union Representative, and her how she could sign off on such a letter when she was fully aware that the only reason I had not been promoted was due to my disability.

45. I made a formal request that Respondent Riccio file a grievance on my behalf regarding Respondent's failure to promote (hereinafter the 9/10 Grievance).

46. Because I am a Union Steward, I knew that it would take several months for my grievance to be processed and wait for notification of a hearing date.

47. I attempted to contact Respondent Riccio on several occasions following my request that she file a grievance on my behalf, but Respondent Riccio refused to return any of my telephone calls.

48. Since that time period, the Respondent continues to offer Team Leader Programs resulting in promotions for my peers, and I continue to be the only individual excluded from the opportunity due to my disability.

49. On or about the third week of February, 2011, due to complications with my disability, I underwent a surgical procedure on my right arm.

50. I returned to work on or about March 2, 2011.

51. On March 28, 2011, my doctor placed me on a lifting restriction and I notified my employer and provided them with my medical forms.

52. I continued to perform my position without incident and was able to perform the essential functions of my position.

53. On April 7, 2011 I was approached by supervisor, Greg Mitchell and notified that Supervisor Bob Young said I must leave the job immediately and not return until my work restrictions were lifted.

54. I questioned Gray why I have been able to work for the last two years with medical restrictions and now it has changed, but I was not provided with an answer and only told to leave the job.

55. The Respondent forced me out of the workplace for five (5) weeks and I lost all of my PTO time during this time period.

56. The Respondent did not face any hardship to allow me to continue to perform my position with a one arm lifting restriction.

57. I performed various duties throughout the work day that included cleaning offices, rearranging chairs and tables, washing windows, emptying small trash containers, all of which did not require that I be able to lift with both arms.

58. Further, I was assigned to perform my duties with another co-worker – such as a buddy system, so I was never in a position where I was forced or required to lift heavy items without assistance.

59. While being forced out of my job during the month of May, 2011, I went down to the Union Hall to file a new grievance regarding managements directive that I stay out of the workplace until my restrictions were lifted (hereinafter "5/11 Grievance") and to check on the status of my 9/10 grievance.

60. At that time, I became aware that Respondent Riccio refused and failed to file my 9/10 grievance of discrimination.

61. Respondent Riccio was well aware that I was declined the opportunity for promotion due to my disability and as my Union Representative Respondent Riccio should have filed a timely grievance on my behalf with or without my request to do so.

62. I did not take any chances that Respondent Riccio would once again fail and/or intentionally refuse to file my newest grievance, so I filled out the official grievance form and submitted it myself for Respondent's April 2011, act of discrimination against me.

63. I was thereafter advised by another Union Representative that Respondent Riccio had again refused to pursue my 5/11 grievance.

64. I believe that Respondent Riccio is aiding and abetting in Respondent's discriminatory actions being taken against me due to my disabilities.

65. Therefore I bring my claims before this Commission against all Respondent's

66. Respondents are in violation of C.G.S. Sec. 51 et seq.

67. Respondents are in violation of C.G.S. Sec. 46a-60(a)(1) for discriminating against me due to my disability.

68. Respondents are in violation of C.G.S. Sec. 46a-60(a)(5) for aiding and abetting in the discrimination against me.

69. Respondents are in violation of the ADA for subjecting me to disability discrimination and disparate treatment.

70. Respondents are in violation of the anti-retaliation provisions of the ADA.

I hereby request that the Commission investigate my complaint and order such relief and remedies, as it deems proper.

The foregoing is true and accurate.
Subscribed and Sworn before me.
On this 10th day of August 2011

_Michelle Gramlich_
Officer of the Superior Court
Michelle Gramlich, Esq.

_Curtis Reddick_
CURTIS REDDICK

7

FORM 103(1)

I request the Connecticut Commission on Human Rights and Opportunities investigate my complaint, secure for me my rights as guaranteed to me under the above cited laws and secure for me any remedy to which I may be entitled.

CURTIS REDDICK being duly sworn, on oath, states that he is the Complainant herein; that he has read the foregoing complaint and knows the content thereof; that the same is true of her/his own knowledge, except as to the matter herein stated on information and belief and that as to these matters s/he believes the same to be true.

Dated in North Haven, Connecticut on this 10th day of August, 2011

_____
(Complainant's Signature)

Subscribed and sworn to before me on August 10, 2011
(Date)

_____
(Notary Public/Commissioner of the Superior Court)

My commission expires: _____

MICA NOTZ
NOTARY PUBLIC
MY COMMISSION EXPIRES FEB. 28, 2014

RECEIVED
STATE OF CONNECTICUT
AUG 11 2011
Comm. On Human Rights & Opportunities
WEST CENTRAL REGION

Law mail out affidavit revised 04/12/07