**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

CURTIS REDDICK,                    :        No. 3:13cv1140 (WWE)
       Plaintiff,                   :
                             :
v.                                 :
                             :
YALE UNIVERSITY,                   :
THE FEDERATION OF UNIVERSITY       :
EMPLOYEES, LOCAL 35, UNITE         :
HERE, AFL-CIO and MEG RICCIO,      :
       Defendants.                  :

**MEMORANDUM OF DECISION ON DEFENDANTS'**
**MOTIONS FOR SUMMARY JUDGMENT**

      In his complaint, plaintiff Curtis Reddick asserts that the defendant Yale University ("Yale") discriminated and retaliated against him in violation of the Americans with Disabilities Act (the "ADA"), the Family Medical Leave Act ("FMLA"), and the Connecticut Fair Employment Practices Act; and he asserts that the Federation of University Employees, Local 35, Unite Here, AFL-CI ("Local 35") and Meg Riccio, discriminated and retaliated against him in violation of CFEPA and the ADA.

      Defendants Yale University, Local 35 with Meg Riccio have filed separate motions for summary judgment on the counts against them.  For the following reasons, Yale's motion for summary judgment will be granted; and Local 35 and Riccio's motion for summary judgment will be granted.

**I.  BACKGROUND**

      The parties have submitted statements of facts, exhibits and affidavits, which reveal the following relevant undisputed facts.

      Plaintiff was hired by Yale University as a custodian in 1990.  Plaintiff has held

the position of Senior Custodian since 2003.  The Senior Custodian job description and Requisition Details provide that a Senior Custodian may be required to move and carry furniture, equipment, trash, and other materials weighing up to 50 pounds without assistance.  A Senior Custodian is also expected to "move wet/dry vacuums and floor scrubbing machines weighing up to 85-150 pounds without assistance."

At the time relevant to this action, defendant Margaret Riccio was Chief Steward for defendant Local 35.  Plaintiff is a member of Local 35 and has served as a Union Steward since 1998 or 1999.

A collective bargaining agreement negotiated between Yale and Local 35 governs wages, rates of pay, hours and other conditions of employment applicable to Local 35 members.  At Section 2.9, the collective bargaining agreement states that "[a]n employee may be assigned to any or all of the 'typical duties and responsibilities' set forth in the job description."  Section 2.9 instructs that "[a]n employee may be required to perform duties and responsibilities of lower grade employees in his or her craft, trade, or department when necessary to meet operating conditions...."

Specifically relevant to this dispute, the collective bargaining agreement Section 7.3 provides:

> To qualify for sick leave pay, an employee is required to be in fact unable to work due to illness or injury, or if able to work, that medical attention was required that day to continue working. The University may in its discretion require an employee to submit proof from a health care provider (i.e. doctor, nurse, physicians assistant, pharmacist) that his or her absence was necessary and due to illness or injury. Prior to requesting medical proof, if either party detects a pattern or evidence of excessive absenteeism, a meeting with a supervisor and union representative will immediately take place to review the circumstances and share the results with the employee. The employee will be advised that further abuses may lead to disciplinary action and the requirement to submit proof from a health care provider for further absences. The University may also require proof before an employee returns to work that he or she

2

is physically fit to return. Any employee who is found to have obtained sick leave pay under false pretenses is subject to discharge.

At Section 19.7, the agreement states that "[n]o employee will be subject to discipline for refusing to perform work that a reasonable employee in a similar situation would consider unsafe."  Section 27.1 sets forth: "The University and its management and the Union and its members shall not unfairly discriminate against any employee with regard to employment, transfer, promotions, work assignments, or any other terms or conditions of employment because of such employee's race, color, creed, religious belief or non belief, national origin, political affiliation, age, sex, handicap, sexual orientation, status as a veteran or disabled veteran, or activity in or on behalf of the Union."

Section 21.1 provides: "Except as otherwise provided in this Agreement, nothing in this Agreement shall be deemed to limit the University in any way in the exercise of the regular and customary functions of management, including, among other things, the direction of the working forces; the establishment of methods of operation; the promotion and demotion of employees; the establishment of plans for increased efficiency; the adoption and maintenance of engineering standards and standards of performance and quality; the right to hire, suspend, or discharge for proper cause; the right to select or employ supervisory employees, including foremen and their assistants; the right to transfer or relieve from duty because of lack of work; the right to determine from time to time the number of hours worked per day and per week; and the right to establish and enforce reasonable rules and regulations pertaining to personal conduct and deportment of employees and the determination

3

of employee competency."

Plaintiff asserts that in 2008, he began to suffer from a chronic medical condition that causes severe muscle spasms that interfere with his circulatory system and blood flow.  Plaintiff maintains that he also suffers from seizures, pancreatitis and chronic abdominal pain.  Plaintiff has not articulated a clear diagnosis or explanation for his disability.

Commencing in 2008, plaintiff has been granted two full leaves of absence and eight intermittent or caregiver leaves of absence pursuant to the FMLA.  Plaintiff applied for intermittent FMLA leave due to asserted epidsodic flare-ups.

In April 2009, Local 35 and Yale University negotiated a new position of Custodial Team Leader with a specific training and selection process.  The negotiated agreement provided that bargaining unit employees were eligible to bid on new positions but none were guaranteed a position; and that successful completion of training was required for any applicant to be placed in the position on a probationary or trial basis.  The position was posted in June 2009.

Numerous employees, including plaintiff, completed the application process. Seventeen employees, including plaintiff, were selected for training.  Training was scheduled for two weeks in July and August 2009.

After the training, Yale selected as probationary employees six applicants who had completed the training.  Plaintiff was not selected.

Plaintiff did not file a grievance relative to his non-selection in 2009.  However, in September 2009, plaintiff filed a grievance regarding his rights under the FMLA.  The grievance was heard and settled by Yale.

4

Plaintiff alleges that in September 2009 plaintiff's supervisor, Marquis McGraw, harassed and retaliated against him for poor attendance that occurred when plaintiff was using approved FMLA leave of absence time.

According to plaintiff, in October 2009, McGraw falsely accused him of failing to clean a bathroom located within his assigned area.  Plaintiff later reported to the Dean of Yale Law School that he had been harassed and discriminated based on this incident.   Plaintiff did not report the incident to his immediate supervisor.

On November 13, 2009, plaintiff filed another grievance regarding the presence of union stewards at discipline meetings.  The grievance was resolved after Yale agreed to have union stewards available at disciplinary meetings.

Later that month, plaintiff filed a grievance alleging that McGraw had spoken to another supervisor, Mike Roberts, about plaintiff's medical condition without having permission to do so; and another grievance alleging that McGraw was discriminating against him on the basis of his disability.  Plaintiff withdrew both grievances without prejudice to refiling.

In December 2009, plaintiff's attorney wrote a letter to Yale, asserting that due to his exercise of FMLA rights and his status as a union steward, plaintiff had been harassed and treated in a disparate manner by Yale since July 2008.

On January 19, 2010, plaintiff was issued a written reprimand for leaving his assigned work area on January 7, 2010, despite having been told by a supervisor that he could not leave the area without coverage.  On January 7, plaintiff filed a grievance alleging that he was scheduled to attend a stewards' meeting and was told that he

could not attend even though the students were on break and no events were scheduled.

In January 2010, plaintiff filed a grievance requesting that a written warning be removed from his file and that he be recognized as a union steward.  The grievance was resolved and the reprimand was removed.

In March 2010, the eleven applicants who had previously completed the training for the custodial team leader position but had not been selected were notified of a mandatory three day workshop on March 17-19, 2010.  All of the employees were informed that successful completion of this training was required to be considered for the position of team leader.

Plaintiff did not complete all three days of the training.  He asserts that he missed the last day of training due to his disability. Riccio maintains that she saw plaintiff at the training on the first day.  She states that he left during the morning and did not return for the remainder of the workshop.

However, plaintiff and another employee were not selected for the position of team leader.  Plaintiff did not file a grievance concerning his non-selection for the position.

In July 2010, Yale sought applicants for additional team leader positions.  An applicant was required to participate in a mandatory training program that was scheduled between October 4 and October 15.  Plaintiff applied for this position.

Plaintiff maintains that during his initial interview in September 2010, he requested that he be required to participate in only the portion of the training that he had previously missed due to his illness.  He contends that his request was rejected.

6

Plaintiff was not chosen from among the applicants to participate in the training that was a prerequisite to the selection for team leader.  Riccio, who was one of the signatories on plaintiff's rejection letter dated September 27, 2010, states that plaintiff was not selected based on a combination of the interview process and the reference letters provided.

After learning of his non-selection, plaintiff contacted Riccio and left a message. He contends that he asked how Riccio could have signed such a letter when she was aware that he had a disability and that he asked her to file a grievance based on the failure to promote him.  Riccio recollects that she contacted plaintiff and explained that Local 35 would not file a grievance because there had been no violation of the collective bargaining agreement.  Plaintiff did not file a grievance over the denial of the promotion or denial of his request for accommodation.

After an absence on March 23, 2011, plaintiff returned to work in March with a doctor's note, stating that he was unable to perform "sustained heavy lifting or carrying, no work above shoulder."  Plaintiff maintains that his then-supervisor, Greg Mitchell, would not allow him to work with documented restrictions.

Plaintiff's doctor provided that plaintiff could return to work on April 12, with restrictions: "No work above shoulder level with right hand/arm;" "No carrying over five pounds with his right hand/arm;" and a daily work duration varying "from 4 to 8 hours, as appropriate."  Yale refused to allow him to return to work with these restrictions.

In April 2011, plaintiff drafted a grievance alleging he was not allowed to return to work until his doctor lifted the restrictions in violation of the collective bargaining agreement's sections 7.3, 19.7 and 27.1.  Plaintiff left this grievance at the Local 35

7

office.  Riccio reviewed the grievance to determine if there was any basis for believing that Yale had violated the collective bargaining agreement.

Riccio left several messages for the plaintiff over a two-week period explaining that Local 35 could not file or pursue a grievance without further information. In these messages, Riccio explained that she needed specific information about the plaintiff's medical restrictions and she had determined that Yale did not violate the collective bargaining agreement by refusing to allow plaintiff to work if he could not safely perform the duties of his position.

Neither Local 35 nor Riccio had access to any medical records relating to plaintiff's restrictions or his ability to work.  Riccio asserts that she did not know what plaintiff's medical condition was or whether it was a disability.  Local 35 decided not to process the grievance.

On May 2, 2011, plaintiff's doctor indicated that plaintiff could work without restrictions.  Plaintiff returned to work where he remains an employee.  Plaintiff is still a Union Steward for Local 35 and has filed numerous grievances since April 2011 on his own behalf and on behalf of other employees.

On September 1, 2011, Mitchell held a meeting with his employees.  During that meeting he reassigned plaintiff to other duties within the same building.  However, to date, plaintiff has not been demoted or denied a salary increase.

In September 2011, plaintiff filed a grievance alleging that his supervisor Mitchell had discriminated against him by moving him to another position.  After the grievance

had been scheduled to be heard in December 2013, plaintiff stated that he was passing on the grievance.

Plaintiff filed the instant action on August 8, 2013.

## II.  DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

A.  Disability Discrimination

Plaintiff's disability discrimination and retaliation claims against Yale and Local 35 in violation of ADA and CFEPA are predicated on the following: Failure to promote

him to the Team Leader position; failure to accommodate him by allowing him to complete the training that he asserts he missed due to his disability; failure to file a grievance over the denial of the Team Leader promotion; and failure to process a grievance over Yale's refusal to allow him to work as a custodian with medical restrictions.

      1.    <u>Timeliness of the ADA and CFEPA Claims</u>

Defendants Yale and Local 35 maintain that most of plaintiff's disability discrimination claims are time barred.

According to his testimony, plaintiff's request for accommodation was denied during his interview on September 16, 2010; plaintiff was denied promotion to team leader on September 27, 2010; and Local 35 informed him that it would not file a grievance relative to his non-promotion on October 11, 2010.

CFEPA provides that plaintiff file a charge of discrimination with the Connecticut Commission of Human Rights and Opportunities ("CHRO") within 180 days after the alleged act of discrimination.  Conn. Gen. Stat. § 46a-82(e).

Generally, a Connecticut plaintiff asserting an ADA claim has 300 days from the alleged discriminatory conduct to file an administrative charge with Equal Employment Opportunity Commission ("EEOC").[1]  42 U.S.C. § 2000e-5(e)(1).  Discriminatory conduct not timely charged before the EEOC is time barred.  <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 394 (1982).

---

[1] Connecticut is a "deferral state" with a work share arrangement entered into by the state and federal anti-discrimination agencies.  <u>Bagley v. Yale University</u>, 42 F. Supp. 3d 332, 341 (D. Conn. 2014).

Plaintiff filed his administrative complaint on August 11, 2011.  Thus, absent factors such as consent, waiver or equitable tolling, the alleged conduct that occurred prior to February 13, 2011 is untimely for purposes of CFEPA; and conduct that occurred prior to October 16, 2010 is untimely for purposes of the ADA. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (administrative filing is not a jurisdictional prerequisite to suit in federal court but a requirement similar to a statute of limitations); Lucarelli v. CHRO, 136 Conn. App. 278, 281-82 (2012).

Plaintiff argues that the continuing violation doctrine saves his allegations from being considered as untimely.  According to the continuing violation doctrine, if a plaintiff files an administrative charge that is timely as to any incident of discrimination that is in furtherance of an ongoing policy of discrimination, all claims of discrimination under that policy will be timely. O'Hazo v. Bristol-Burlington Health Dist., 599 F. Supp. 2d 242, 253 (D. Conn. 2009).  However, in National R.R. Passenger Corp. v. Morgan, the Supreme Court instructed that "[e]ach discrete discriminatory act starts a new clock for filing charges." 536 U.S. 101, 113 (2002).  In interpreting Morgan, the Second Circuit held that claim based on discrete acts are time barred if such acts took place outside the statute of limitation even when undertaken pursuant to a general policy that gives rise to other discrete acts that occur within the limitations period.  Chin v. Port Auth. Of New York & New Jersey, 685 F.3d 135, 157 (2d Cir. 2012).  Specific to CFEPA, the Connecticut Appellate Court has held that "discrete discriminatory acts are not actionable if time barred, even though they are related to alleged acts alleged in timely filed charges."  United Technologies v. Commission on Human Rights and Opportunities, 72 Conn. App. 212, 229 (2002).

The allegations relative to the failure to promote and failure to accommodate represent discrete acts that each constitutes a separate actionable "unlawful employment practice."  See Morgan, 536 U.S. at 114; see also Lee v. Dept. of Children and Families, 939 F. Supp. 2d 160, 170 (D. Conn. 2013) (citing examples of discrete acts of unlawful employment practices).

Accordingly, the Court finds that the timely disability discrimination allegations concern Yale's failure to accommodate him regarding his medical restrictions in March or April 2011; Yale's retaliation against him by reassigning him in September 2011; and Local 35's allegedly discriminatory failure to file the grievance relative to Yale's refusal to accommodate his medical restrictions.

2.    Timely Disability Claims Against Yale

Plaintiff asserts that Yale discriminated against him on the basis of his disability by denying him a reasonable accommodation to allow him to work despite the medical restrictions and then retaliated against him by reassigning him.

a.    Reasonable Accommodation

To survive a motion for summary judgment on a reasonable accommodation claim, plaintiff must show evidence for a reasonable jury to find (1) that he is disabled within the meaning of the statute; (2) that he was able to perform the essential function of the job with or without reasonable accommodation; and (3) that defendant, despite knowing of plaintiff's disability, did not reasonably accommodate plaintiff's disability. Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004) (ADA); Curry v. Allan S. Goodman, 286 Conn. 390, 415 (2008) (CFEPA).  If the employee makes such a prima facie showing, the employer must show that such an

12

accommodation would impose an undue hardship on its business.  Tilman v. Verizon New York, Inc., 2015 WL 4603372, *21 (E.D.N.Y. 2015) (ADA); Curry, 286 Conn. at 415 (CFEPA).[2]

Defendant Yale argues that plaintiff cannot show that he was able to perform an essential function of the job with a reasonable accommodation.  The Court agrees that plaintiff fails to raise an inference that he identified reasonable accommodations that would have allowed him to perform the essential functions of his position.  See Martinsky v. City of Bridgeport, 814 F. Supp. 2d 130, 147 (D. Conn. 2011) (ADA); Curry, 286 Conn. at 416 (CFEPA).  Determining what is a reasonable accommodation requires an inquiry into the benefits of the accommodation and the costs as well.  Bokowski v. Valley Cent. School Dist., 63 F.3d 131, 138 (2d Cir. 1995).  An accommodation is reasonable if it is feasible for the employer to provide the accommodation.  Curry, 286 Conn. at 419.  A reasonable accommodation can never involve the abrogation of the employee's responsibility for an essential function of the job.  Shannon v. New York City Transit Authority, 332 F.3d 95, 100 (2d Cir. 2003) (ADA); Ahmad v. State Dept. of Transp., 2015 WL 897478, *3 (Conn. Sup. Ct. 2015) (CFEPA).  An essential function is considered to be a fundamental duty to be performed in the position rather than a marginal function.  Palmieri v. City of Hartford, 947 F. Supp. 2d 187, 202 (D. Conn. 2013) (ADA).  "A court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position."  Shannon,

---

[2]Generally, the same standards are applied to ADA and CFEPA discrimination claims.  Ferrante v. Capitol Regional Educational Council, 2015 WL 1445206, *4 (D. Conn. 2015).

332 F.3d at 100.

Here, a lifting restriction to weights of 5 to 10 pounds would have abrogated a fundamental duty enumerated as a physical requirement of the Senior Custodian position. Plaintiff suggested that Yale provide him with a buddy or a helper to perform duties outside of his medical restrictions.  However, Courts have not considered as reasonable an accommodation that the employer hire an additional employee or reassign tasks to other employees.  Stevens v. Rite Aid Corp., 2015 WL 5602949, *13 (N.D.N.Y. Sept. 23, 2015) (citing cases).

Additionally, plaintiff has not raised an inference that he qualified as an individual with a disability as defined by the ADA.[3]  The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual ...." 42 U.S.C. § 12102(1).  A temporary impairment lasting only a few months is generally too short in duration to be considered substantially limiting.  Palmieri, 947 F. Supp. 2d at 199.  Plaintiff has not submitted evidence either (1) that his medical restrictions were related to the same disabling medical condition that causes severe muscle spasms that interfere with his circulatory system and blood flow, or (2) that the Local 35 should have understood that the medical restrictions were related to that disabling medical condition.  Accordingly, the Court will grant summary judgment in Yale's favor.

───────────────

[3]Although the same standards under the ADA are applied to analyze CFEPA disability claims, Connecticut courts have interpreted CFEPA's definition of "disability" to be "broader the ADA or the ADAA, because it covers 'chronic' impairments even if not permanent" and CFEPA does not require that the chronic impairment "substantially limit" a major life activity.  Wanamaker v. Westport Bd. of Educ., 899 F. Supp. 2d 193, 212 (D. Conn. 2012).

b.   <u>Retaliation</u>

In order to establish a prima facie case of retaliation, plaintiff must show that "(1) the employee was engaged in an activity protected by the federal disability statute, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." <u>Sarno v. Douglas Elliman-Gibbons & Ives, Inc.</u>, 183 F.3d 155, 159 (2d Cir. 1999).   In the context of retaliation, the applicable standard for adverse employment action is broader than that applied to discrimination claims. <u>Santiesteban v. Nestle Waters North America, Inc.</u>, 61 F. Supp. 3d 221, 241 (E.D.N.Y. 2014). In a retaliation case, "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Burlington Northern & Santa Fe Railway Co.</u>, 548 U.S. 53, 68 (2006).

Defendant maintains that Mitchell had not been informed of plaintiff's CHRO filing until September 8, 2011.  The Court does not have any evidence regarding Mitchell's knowledge other than defendant's assertion that he had not been so informed by Yale. Defendant admits that its Office of General Counsel received the CHRO complaint on August 18, 2011. The Court must construe the record evidence in favor of plaintiff.  Accordingly, the Court will assume that Mitchell could have heard of plaintiff's CHRO filing before September 1, 2011.

In his affidavit, plaintiff describes his reassignment as being placed on an as-needed basis, and that several months after the reassignment, he was asked to lift

heavy boxes despite recuperating from a medical condition.  Defendant maintains that plaintiff was transferred to work other duties in the same building and has submitted an exhibit indicating that plaintiff's new shift was from 4 AM to 12 Noon with specific cleaning areas and trash duties. No evidence suggests that plaintiff had been reassigned to work on an as-needed basis as opposed to a shift schedule. Plaintiff cannot rely upon his own self-serving affidavit to create an issue of fact.  Wojcik v. Brandiss, 973 F. Supp. 2d 195, 215 (E.D.N.Y. 2013).

Further, plaintiff has not set forth that he suffered any consequences from being requested, several months after his reassignment, to lift heavy boxes.  The Court is unclear whether plaintiff made any attempt to lift the boxes, whether he refused to do so, or whether he was ever requested to lift any objects beyond his capacity again. Without more substantiation of how the reassignment negatively affected him, plaintiff has not raised an inference that he experienced a retaliatory adverse action that would serve to dissuade a reasonable employee from making a complaint or charge. Accordingly, summary judgment will be granted on this claim.

3.    Timely Disability Discrimination Claims Against Local 35

Defendant Local 35 argues that summary judgment should enter on plaintiff's timely ADA and CFEPA disability discrimination claims predicated on the Local 35's failure to process the grievance over Yale's refusal to allow plaintiff to work with lifting or other restrictions.

"Employment discrimination claims against labor organizations are analyzed differently from claims against employers."  Holcombe v. U.S. Airways Group, Inc., 976 F. Supp. 2d 326, 338 (E.D.N.Y. 2013).  A plaintiff claiming that a union discriminated or

retaliated against him based on her disability is required to show that (1) the union breached its duty of fair representation, and (2) that the union's actions were motivated by a discriminatory or retaliatory animus.  McIntyre v. Longwood Cent. Sch. Dist., 380 Fed. Appx. 44, 49 (2d Cir. 2010).  A breach of the duty of fair representation occurs when a union's conduct is arbitrary discriminatory or in bad faith, or when the union causes an employer to discriminate against employees on arbitrary, hostile, or bad faith grounds.  Holcombe, 976 F. Supp. 2d at 339.  "Mere negligence or tactical error on the part of a union are insufficient to establish a breach of the duty of fair representation." Martinez v. Caravan Transp., Inc., 253 F. Supp. 2d 403, 411 (E.D.N.Y. 2003).  Similarly, "an error of judgment is insufficient to sustain a member's burden of showing that his union breached its duty of fair representation."  Gorham v. Transit Workers Union of Am., AFL-CIO, Local 100, NYCTA, 1999 WL 163567, at *3 (S.D.N.Y. 1999).  Judicial review of union action is highly deferential in recognition of the "wide latitude" that a union requires for effective performance of its bargaining responsibilities.  Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 126 (2d Cir. 1998).  Tacit union acquiescence in an employer's discriminatory practices is sufficient to render the union liable, but a union has discretion to refuse to pursue claims which it deems lack merit.  Ayazi v. United Federation of Teachers, Local 2, 2011 WL 888053, *15 (E.D.N.Y March 14, 2011).  A union is subject to liability for a decision not to process a grievance only if "substantial evidence" indicates that the union engaged in discrimination that was "intentional, severe and unrelated to legitimate union objectives."  Romero v. DHL Express, Inc., 2015 WL 1315191, *9 (S.D.N.Y. March 24, 2015).

Defendant maintains that it did not file the grievance because it found that Yale

17

had not violated the collective bargaining agreement by failing to accommodate him and because it did not have adequate medical information from plaintiff to substantiate the grievance.  Upon review of the evidence, the Court finds no inference that the Union breached its duty of fair representation or acted with discriminatory or retaliatory animus in failing to process plaintiff's grievance.  The collective bargaining agreement does not provide that Yale is required to provide light duty assignments to employees who cannot perform usual duties due to a lifting restriction.  As previously discussed with regard to the claim against defendant Yale, plaintiff has not raised an inference either (1) that he could perform his position's essential function of lifting or moving objects that weighed up to 50 pounds with a reasonable accommodation, or (2) that plaintiff Yale had notice that his medical restrictions in March and April 2011 related to a disability covered by the ADA.

Plaintiff argues that an inference of discrimination is raised by the fact that Local 35 previously denied him an accommodation related to completion of his Team Leader training.  Other incidents of alleged discrimination, even if time-barred, can be submitted as circumstantial evidence to prove a case of discrimination.  Nelson v. City of Bridgeport, 2012 WL 4902812, *5 (Conn. Sup. Ct. 2012).  However, to raise an inference of discriminatory animus, the time-barred adverse employment actions should be relevant to the timely allegations of discrimination. See Downey v. Southern Natural Gas Co., 649 F.2d 302, 305 (5th Cir. 1981) (time-barred adverse employment action relevant to question of constructive discharge); See also Speedy, Inc. v. L & P Graphics, Inc., 957 F.2d 1033, 1037-38 (2d Cir. 1992) (statute of limitations does not bar use of time-barred evidence that is relevant to the events during the period).

18

Here, plaintiff has failed to demonstrate (1) that the requested accommodation regarding the training sessions and the accommodation regarding the medical restrictions concerned the same disability; or (2) that Local 35's response to his request for an accommodation relevant to the Team Leader training bears any nexus to his request for accommodation due to the March/April medical restrictions.  Accordingly, the Court finds that plaintiff has failed to adduce evidence raising an inference of discrimination pursuant to CFEPA and the ADA.

B.    FMLA Claims

Plaintiff alleges discrimination and retaliation by defendant Yale in violation of the FMLA.  Defendant maintains that most of plaintiff's FMLA allegations are time-barred.

The Second Circuit has recognized two types of FMLA claims: Interference claim and retaliation claims.  Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004). An FMLA action may be brought not later than two years after the date of "last event constituting the alleged violation for which the action is brought."  29 U.S.C. § 2617(c). The limitations period for willful violations or actions taken with reckless disregard for plaintiff's FMLA rights is three years.  29 U.S.C. § 2617(c)(2); Riddle v. Citigroup, 449 Fed. Appx. 66, 70 (2d Cir. 2011). Plaintiff filed the instant action on August 8, 2013; thus non-willful violations occurring before August 8, 2011 are time barred, and willful violations occurring before August 8, 2010 are time barred.

Plaintiff asserts that his allegations concerning Yale's refusal to allow him to make up the Team Leader training constitutes a willful retaliatory act for his prior use of FMLA leave.  If an employer acted reasonably, or unreasonably but not recklessly in determining whether its actions were illegal, the alleged violations are not considered

19

willful.  Porter v. New York Univ. Sch. of Law, 392 F.3d 530, 531-32 (2d Cir. 2004).

Here, plaintiff has not alleged and has not adduced evidence indicating that defendant

Yale acted recklessly, or even unreasonably, in determining that he should not be

excused from attending the entire training scheduled in October 2010, which was

required of all the other applicants for the Team Leader position.  Accordingly, the Court

finds that the two-year statute of limitations applies to plaintiff's claims.

In order to make out a prima facie case of FMLA retaliation, plaintiff must

establish that: (1) he exercised rights protected under the FMLA; (2) he was qualified

for his position; (3) he suffered an adverse employment action; and (4) the adverse

employment action occurred under circumstances giving rise to an inference of

retaliatory intent.  Potenza, 365 F.3d at 168.  In the context of FMLA retaliation, an

adverse employment action is any action by the employer that is likely to dissuade a

reasonable worker in plaintiff's position from exercising his or her FMLA rights.  Millea v.

Metro-North Co., 658 F.3d 154, 164 (2d Cir. 2011). Consistent with the Court's prior

discussion above, the Court finds that plaintiff has not established an adverse action

that would dissuade a reasonable worker in his position from exercising his FMLA

rights.  The Court will grant summary judgment on this claim.

C.    Claims against Riccio

Plaintiff alleges that Riccio violated CFEPA, Section 46a-58, by aiding and

abetting Local 35 and Yale in discriminating and retaliating against him.  Plaintiff does

not dispute that his aiding and abetting claims is based on the same factual predicates

as the CFEPA and ADA claims against Local 35.  Accordingly, consistent with its prior

discussion, the Court finds as timely only plaintiff's claim asserting discriminatory failure

to file the grievance relative to the refusal to accommodate his medical restrictions. The Second Circuit has held that union members are immune from liability in suits for breach of the duty of fair representation.  Morris v. Local 819, Intern. Broth. of Teamsters, 169 F.3d 782, 784 (2d Cir. 1999).  As previously discussed, to succeed on his CFEPA claims against Local 35, plaintiff is required to show a breach of the duty of fair representation.  Accordingly, the Court finds that plaintiff cannot hold Riccio personally liable for a violation of CFEPA.  Further, plaintiff cannot maintain this claim of aiding and abetting a discriminatory practice because the Court finds that summary judgment is appropriate on the underlying disability discrimination claim.

### III.  CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment [docs. #64 and 66] are GRANTED. The clerk is instructed to enter judgment in favor of defendants and to close this case.

Dated this 20th day of November, 2015, in Bridgeport, Connecticut.


/s/Warren W. Eginton
Warren W. Eginton
Senior U.S. District Judge

21